Argued and submitted June 2, affirmed October 13, 1982

JOHNSON,
*Petitioner,*
*v.*
EMPLOYMENT DIVISION et al,
*Respondents.*

(No. 81-AB-1462, CA A23488)

651 P2d 1365

Terence C. Leeds, Eugene, argued the cause and filed the brief for petitioner.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With her on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is an unemployment compensation case in which petitioner, a part-time substitute teacher, was denied benefits under a statutory provision denying benefits to school teachers between school years. We affirm.

During the 1979-80 school year, Eugene School District 4J (District) employed petitioner as a full-time instructor under a one-year written contract. The contract terminated in August, 1980. Petitioner applied immediately for unemployment benefits based on the 1979-80 employment, and respondent Employment Division (Division) approved his application.

Petitioner searched unsuccessfully for full-time employment throughout the 1980-81 academic year. In compliance with directions from the Division, he registered as a substitute teacher in a number of school districts and accepted the 19 days of work offered to him by those districts. Work at substitute teaching enabled him to stretch his initial unemployment benefits through April 4, 1981. On April 8, 1981, he applied for and received a 13-week extension of benefits. At the close of the 1980-81 school year, while he was still eligible for benefits under this extension, petitioner reopened his claim.

On May 29, 1981, the District mailed petitioner a form letter advising him that the District intended to employ him as a substitute teacher during the 1981-82 school year "on the same basis as you were employed during the 1980-81 school year." The letter further requested that petitioner indicate, by checking the appropriate box and returning the form, whether or not he wished to remain on the District's active substitute list for the 1981-82 school year. Petitioner did not return the form, but he informed the school district by telephone that he did not wish to remain on the list, because he was seeking full-time employment.

The Division denied petitioner's 1981 claim for benefits, citing ORS 657.167(1), which provides that:

"* * * benefits shall not be paid based on * * * services for any week of unemployment commencing during the period between two successive academic years * * * if such

individual performs such services [instructional, research or administrative] in the first of such academic years * * * and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms."

The Employment Appeals Board (EAB) affirmed the Division's decision by final order on December 1, 1981. Petitioner seeks judicial review.

Petitioner contends that this case is controlled by *Mallon v. Emp. Div.*, 41 Or App 479, 599 P2d 1164 (1979). The claimant in *Mallon* had worked during the 1977-78 school year as a full-time research assistant at Oregon State University and as a part-time math instructor at Linn-Benton Community College. His full-time position terminated at the close of that school year, but the part-time job was to resume at the start of the 1978-79 academic year. He claimed unemployment benefits for the summer recess, but the Division denied his claim, reasoning that the "any such capacity" language in ORS 657.167(1) means that benefits should be denied any one who had performed *any* type of instructional, research or administrative service for any educational institution in the past school year and would in the forthcoming year perform any such service in *any* educational institution. Claimant's part-time job qualified as "any such service." This court reversed, holding that:

"* * * the statutory phrase, 'a reasonable assurance that such individual will perform services in any such capacity,' means he is assured he will perform any one of the three named types of services in the same or similar quantity respecting full-time or part-time service as performed during the preceeding academic term." 41 Or App at 484.

We acknowledged that the Division's decision was consistent with a literal reading of the statute but chose to "eschew narrow interpretations" of the statute in order to avoid a harsh result that we "presume[d] the legislature did not intend." 41 Or App at 483-84.

Our decision in *Mallon* was based largely on testimony given on behalf of the federal Department of Labor before the Oregon House Labor Committee. Presented with

a hypothetical set of facts and asked to apply ORS 657.167, the Department's witness said that if a claimant lost both his full-time job as a salesman and his part-time job as a teacher at the same time but would regain the part-time job at the end of a summer recess, the claimant would be entitled to benefits during the summer recess based on his employment as a salesman. Similarity between the hypothetical facts and the *Mallon* facts led us to extend unemployment benefits to Mallon.

Petitioner's *Mallon* argument is twofold. First, he asserts that the facts in *Mallon* and the facts here "differ only slightly," making *Mallon* directly applicable:

> "The only difference in *Mallon* was that * * * the question of an extension never arose. Since both claimants based their applications on full-time employment, and both had reasonable assurances of part-time work, but not full time work, petitioner submits there is no reason to distinguish one from the other."

Second, petitioner relies on the spirit and rationale of *Mallon,* urging this court to "eschew" a narrow interpretation of the statute in order to avoid a harsh result. His argument is as follows: His initial benefits were based on the 1979-80 school year when he was employed full time; in order to remain eligible for those benefits, he was required by the Division to accept work as a substitute teacher during the 1980-81 school year; because he followed the Division's directions, the 1980-81 and 1981-82 school years are "two successive academic years" within the statute. If he had not been required to substitute, his eligibility for benefits would now be determined by a comparison of his 1979-80 full-time employment and his prospective part-time employment (the *Mallon* facts), instead of by a comparision of two successive years of part-time employment. In petitioner's words, by affirming the Division's decision,

> "this court would essentially hold that the Division can force a teacher previously employed full time to accept substitute teaching and then deny that teacher part of his statutorily ordered benefits because that teacher found enough substitute teaching to stretch his benefits over a year's time. The effect is to penalize a good faith compliance with the required work search."

The Division argues that *Mallon* should be over-ruled, because it makes Oregon law inconsistent with the Federal Unemployment Tax Act (FUTA), jeopardizing Oregon's "tax offset credit" and eligibility for certain federal administrative grants.

The Unemployment Compensation Amendments of 1976, amending FUTA, made benefits unavailable to professional employes of educational institutions during vacations and regular breaks. A state's failure to enact legislation implementing these amendments would render that state ineligible for the "tax offset credit" and certain administrative grants. The Department decides whether a state program passes muster.

After *Mallon* was decided, the Division revised its policy to accommodate *Mallon,* explicitly restricting the policy change to situations factually identical to *Mallon.* The Division memorandum enunciating the policy change states that the Division will not grant benefits if the full-time/part-time work patterns are reversed. The Department, by letter to the Division, (1) approved the Division's decision to apply *Mallon* sparingly and (2) sought assurances that the Division would attempt to negate *Mallon* by seeking remedial legislation and by taking another case through the judicial review process in pursuit of a different result.

The Division contends that the Department's disapproval of *Mallon* means that the *Mallon* court misconstrued the Department's testimony on which it relied. Respondent therefore concludes that *Mallon* construes Oregon's statute in a manner that takes it out of compliance with the federal law, even though the literal statutory language complies with federal requirements.

The Division's second argument is that *Mallon* can be distinguished from this case on its facts. In applying ORS 657.167, the Division is required to look only at the academic years or terms immediately preceding and immediately following the time period for which benefits are claimed. In *Mallon,* the claimant in the first year had a full time job and a part-time job; in the second year he had only the part-time job. This court therefore concluded that he

was not performing in the same "capacity" in two successive academic years. Petitioner, however, was a substitute teacher in the year immediately preceding the summer recess for which he claims benefits, and for the year immediately following he has "reasonable assurances" that he will again be a substitute teacher if he remains on the active substitute list. He could therefore perform in the same capacity for two successive academic years, falling directly within the ORS 657.167 disqualification.

Although the *spirit* of *Mallon* may apply to this case, the letter does not; the case can be distinguished on its facts and is therefore not directly applicable. Further, the holding in *Mallon* is that

> "* * * the statutory phrase, 'a reasonable assurance that such individual will perform services in any such capacity,' means he is assured he will perform any one of the three named types of services in the same or similar quantity respecting full-time or part-time services *as performed during the preceding academic term.* * * *" (Emphasis supplied.)

In this case, the "preceding academic term" is the 1980-81 school year, when petitioner was a substitute teacher, not the 1979-80 school year. *Mallon* therefore does not require the Division to grant benefits to petitioner; the statute requires that it not do so.

This case does, of course, provide an opportunity for an extension of *Mallon* should we wish to extend it. However, the Department's disapproval of *Mallon* indicates that their witness' testimony may indeed have been misunderstood by us in *Mallon*[1], and the Department's characterization of *Mallon* as a "strained interpretation" of the law weighs against any extension. Because *Mallon* can be distinguished, however, we can and do affirm the Division's decision without considering overruling *Mallon*. We might consider overruling it, although it is not necessary for the disposition of this case, if we believed that it (1) was

---

[1] Respondent asserts that the reason the Department's witness testified that the hypothetical claimant could receive benefits was because his full-time job was "noneducational."

wrongly decided and (2) jeopardizes Oregon's unemployment compensation program. We do not reach (1), because (2) is not present. Despite the Department's obvious displeasure with *Mallon,* its correspondence does not hint that federal funds will be cut off or the tax offset credit lost if the Division's efforts to negate *Mallon* are unsuccessful.

Affirmed.