Argued and submitted June 15, affirmed November 9, 1983

ZEEK,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(82-AB-1731; A26613)

672 P2d 349

Paul Meadowbrook, Salem, argued the cause for petitioner. With him on the brief was Theresa L. Wright, Salem.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

No appearance for respondent Molalla School District 35.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

Van Hoomissen, J., dissenting.

**NEWMAN, J.**

Petitioner has been a school secretary at Molalla Grade School since 1976. She sought unemployment compensation benefits for the period that she was unemployed between the 1981-82 and 1982-83 academic years. The Employment Appeals Board (EAB) denied her claim. We affirm.

Molalla School District No. 35 operated its school on a 12-month academic year. Petitioner worked 12 months each year. In May, 1982, the voters defeated the district's proposed budget and, as a consequence, the district adopted the traditional 10-month academic year. The district's superintendent sent petitioner a memorandum dated June 25, 1982, respecting reemployment for the 1982-83 academic year, as follows:

"June 25, 1982

"To:      All Classified Employees

"From:   Bill Jordan, Superintendent

"Re:      Employment for the 1982-1983 School Year

"Please be advised that as a regular full time or regular part time classified employee of this district you will be reemployed for the 1982-1983 school year. Such reemployment is subject to available funds and the exercising of the Reduction in Force portion of the contract between the local OSEA chapter and the district.

"If during the traditional summer vacation the Reduction in Force provisions of the contract is used, those impacted by the R.I.F. will be notified in accordance with the contract."

Petitioner applied for unemployment benefits for the period between July 9, 1982, the date she finished working for the academic year 1981-82 and August 16, 1982, the date she returned to work for the 1982-83 academic year.

The Employment Division rejected petitioner's claim. It ruled that petitioner "was given reasonable assurance that [she] would be reemployed in the same or similar work in the 1982-83 school year." EAB affirmed, relying on ORS 657.221, which reads, in part:

"Benefits based on services performed in other than an instructional, research or principal administrative capacity for an educational institution, other than an institution of higher education, shall be payable to an individual in the same

amount, on the same terms and subject to the same conditions as benefits payable on the basis of other service subject to this chapter except that benefits shall not be paid on the basis of such services for any week of unemployment which commences during a period between two successive academic years or terms if the individual performs such services in the first academic year or term and there is a *reasonable assurance* that the individual will perform any such services in the second academic year or term for any educational institution." (Emphasis supplied.)

EAB made findings of fact and conclusions of law:

"FINDINGS OF FACT: (1) Claimant worked for this employer as a secretary from January 1978 until July 9, 1982. (2) For the last 10 years, the employer operated their school system on a 12 month basis. (3) The claimant was generally employed year around and generally worked during the summer months. (4) When the employer operated their school system on a 12 month basis, their academic year ended at the end of June and began again approximately three weeks later in the middle of July. (T.P. 11) (5) Because of budgetary problems, the employer determined they would delay the opening of their school system until August 30, 1982. (6) The claimant returned to work on August 16, 1982. (7) On June 25, 1982, the employer notified the claimant and other classified employees that they would be re-employed the 1982-83 school year.

"CONCLUSION AND REASONS: We agree with the decision of the referee and find that the claimant is subject to the provisions of ORS 657.221. Subsection (1) of that statute provides that if an individual has a reasonable assurance of a return to work, they will be subject to a denial of benefits for any week of unemployment which commences during a period between two successive academic years or terms. Here, the claimant had a reasonable assurance that she would be returning to work when the employer reopened their school system for the 1982-83 school year. She, in fact, returned approximately two weeks prior to the day school reopened. Here, the 1981-82 academic year concluded on July 30, 1982, the commencement of the 1982-83 academic year was August 20 [sic], 1982. The period of the claimant's unemployment is therefore between the successive academic years 1981-82 and 1982-83. A denial of benefits is appropriate."

Petitioner argues that the superintendent's memorandum was not "reasonable assurance" under ORS 657.221

because the assurance of employment for the 1982-83 academic year was qualified. "Reasonable assurance," as that term is used in ORS 657.221, is an "inexact term." *Springfield Educ. Ass'n v. School District,* 290 Or 217, 223, 621 P2d 547 (1980). OAR 471-30-075 defines "reasonable assurance" as follows:

> "With respect to the application of ORS 657.167 and ORS 657.221, 'reasonable assurance' means a written contract, written notification, or any agreement, express or implied, that the employe will perform services in the same or similar capacity for any educational institution during a subsequent academic year or term * * *."

The superintendent's memorandum gave petitioner written notification that she would be reemployed for the 1982-83 academic year. That assurance was subject to the availability of funds and exercise of the reduction in force provisions of the labor contract. The statute and rule do not require an unconditional assurance of future employment, only a reasonable assurance. We do not believe that EAB erred in holding that an assurance of public employment is reasonable even if it is subject to the availability of funds and the consequent effect of a reduction-in-force provision of a union contract. That determination is within its range of responsibility for effectuating a broadly stated statutory policy. *See McPherson v. Emp. Div.,* 285 Or 541, 550, 591 P2d 1381 (1979).

EAB also did not err in concluding that petitioner had "reasonable assurance," even though her term of employment for 1982-83 was for an academic year of approximately ten months, rather than twelve months. Her reemployment was nonetheless in a "similar capacity," as defined by OAR 471-30-075. In *Mallon v. Employment Division,* 41 Or App 479, 599 P2d 1164 (1979), this court interpreted ORS 657.167, a companion section covering employes in an instructional, research or principal administrative capacity. There, however, the petitioner, a mathematics instructor, had received assurance of returning only to a part-time job teaching two evenings a week at a community college. He had also been employed full-time in a research position at Oregon State University, but that position had been terminated. The court held that the petitioner was entitled to benefits based on his

service at OSU that he had no assurance would continue. The court stated:

> "* * * Because his full time work at OSU will not continue he is entitled to benefits based on that service. He is disqualified from benefits based on the part-time service which will continue the next term." 41 Or App at 484. (Footnote omitted.)

Here, petitioner had reasonable assurance that she would be returning to a full-time position as school secretary, although she would work only a traditional academic year of approximately ten months. It was within EAB's responsibility to determine that the traditional academic year is an "academic year" within the meaning of ORS 657.221, even though it replaced a 12-month school year, and that petitioner, therefore, was assured of returning to work in a "similar capacity."

Petitioner asserts that EAB's findings that she was *generally* employed year around and *generally* worked during the summer months, are not supported by substantial evidence. The evidence established that she *always* worked year around. That a portion of EAB's findings is inaccurate, but immaterial to its decision, is no basis for reversal. *Kokotan v. Employment Division*, 30 Or App 391, 567 P2d 138 (1977).

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

I respectfully dissent for the reasons given by Board member Whitney:

> "The majority opinion in evaluating 'reasonable assurance' completely ignores the term 'any such services.' The statute provides that benefits shall not be paid if the individual performed services in the first academic year and there is reasonable assurance that the individual will perform 'any such services' in the second academic year. ORS 657.167 which contains this same language as ORS 657.221 now before us, was interpreted by the Oregon Court of Appeals in *Mallon v. Employment Division*, 41 Or App 479, 599 P2d 1164 (1979) and again discussed in *Johnson v. Employment Division*, 59 Or App 626, 651 P2d 1365 (1982). The Court first set out 'In construing a statute, we must keep in mind the general purpose of the statutory plan. The unemployment law was enacted to provide a source of substitute income for any eligible unemployed person unless that person is disqualified.

The disqualifying language should be read with that purpose in mind and we should eschew narrow interpretations which would disqualify otherwise eligible unemployed persons.' The statutory phrase 'a reasonable assurance that such individual will perform services in any such capacity,' means he is assured he will perform services in the same or similar quantity as performed during the preceding academic year. Also, OAR 471-30-075 defines 'reasonable assurance' as an agreement, express or implied, that the employee will perform services in the same or similar capacity.

"In the case at hand, it is obvious the claimant will not be returning to perform services in the same or similar quantity as she had performed. The school system which normally operated on a 12 month basis, was cut short because of budgetary problems and therefore, the claimant's wages reduced by approximately two months. This is certainly not the performance of services in the same or similar quantity."