Argued and submitted June 10, reversed and remanded
for reconsideration November 9, 1983

HAYES,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

JOHNSTONE,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

DYSON,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(82-AB-1871; A26581 82-AB-1706;
A26583 82-AB-1870; A26584)
(Consolidated Cases)

672 P2d 352

James M. Brown, Salem, argued the cause for petitioners. With him on the brief was Douglas, Brown, Carson & Dickey, P.C., Salem.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With him on the brief were Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Judith Tegger, Assistant Attorney General, Salem.

No appearance for respondent Brookings Harbor School District.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Petitioners are school administrators who were employed by Brookings Harbor School District. They sought unemployment compensation benefits for a period during which they were unemployed because the district had shortened the school year when it lost its tax levy and lacked funds. The Employment Appeals Board (EAB) denied the claims. We reverse.

Hayes was principal of a middle school; Dyson was principal of the high school; and Johnstone was its vice-principal. Each petitioner had an employment contract with the district for a specific term for the 1981-82 academic year. Dyson's contract called for him to work 220 days; his last day was to be June 30, 1982. Hayes and Johnstone each had contracts lasting 210 days; their last day was to be June 21, 1982. Each contract provided in part:

> "This contract is also subject to the limitations imposed by the provisions of the local budget law and the conditions of the current agreement between principals and the district school board.
>
> "* * * * *
>
> "It is further understood and agreed that payment of the salary stated in this contract and the obligation of the school district thereunder is subject to the availability of funds."

The district was to pay each petitioner his salary in "twelve (12) equal monthly installments."[1]

In April, 1982, the district notified petitioners that, because its tax levy had failed, it had no funds to complete the academic year. The summer break for students, originally scheduled to begin June 7, was advanced to May 7. The district terminated its entire teaching staff earlier than the date called for in each staff member's contract. Dyson's last working day was May 28, Hayes' was May 21 and Johnstone's was May 26. Dyson and Hayes each lost 20 working days, and Johnstone lost 17 days. Each petitioner returned to work for the next academic year in the latter part of August, 1982. In

---

[1] Although Dyson's and Hayes' contracts are not in the record, the parties agree that all three contracts are similar. The master agreement between principals and the district is also not in the record.

each case, the district deducted money, proportionate to the number of working days lost, from the annual salary.

Petitioners applied for unemployment benefits for the period between their last work day and the last day that they were to work as provided in their contracts. They asserted that they were not asking for benefits for the summer recess but that the summer recess varied with the individual contracts. They claimed they were entitled to unemployment compensation as follows:

| | |
|---|---|
| Dyson | May 28 - June 30 |
| Hayes | May 21 - June 21 |
| Johnstone | May 26 - June 21 |

ORS 657.167(1) provides:

"Benefits based on service in an instructional, research or principal administrative capacity for a school, college, university or other educational institution shall be payable to an individual in the same amount, on the same terms and subject to the same conditions as benefits payable on the basis of other service subject to this chapter, *except that benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years* or, when an agreement provides instead for a similar period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract and if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms. All services by an individual for an educational institution shall be deemed in instructional, research or principal administrative capacity if at least 50 percent of the individual's time is spent in such activities." (Emphasis supplied.)

The district first asserted that benefits should be denied because each petitioner was on summer recess after May 10, 1982, "between two successive academic years" and was assured of returning for the 1982-83 year.[2] The district

---

[2] There is no dispute but that each petitioner had "reasonable assurance," within the meaning of ORS 657.167(1), that the district would reemploy him in a similar capacity for the 1982-1983 academic year. *See Zeek v. Employment Division,* 65 Or App 515, 672 P2d 349 (1983).

ultimately took the position that petitioners were laid off only until June 6, 1982, and were on summer recess "between two successive academic years" for the period after June 6, 1982. Each petitioner has received unemployment compensation for the period before June 7, 1982.

The Employment Division denied petitioners' claims for benefits for the period after June 6, 1982, until the last day each was to work as provided in their contracts. The referee ruled that the district had the right to make reasonable adjustments in the academic year. The referee also concluded that each petitioner was on summer recess "between two successive academic years" after June 6, 1982, received guaranteed wages after June 6 and throughout a period which included the last day that he had contracted to work and was not entitled to benefits after June 6. EAB affirmed.

We must first determine as a matter of law whether EAB erroneously interpreted the "inexact" term "between two successive academic years" in ORS 657.167. *Springfield Education Association v. Springfield School District 19,* 290 Or 217, 621 P2d 547 (1980); *see* ORS 183.482(8)(a). EAB ruled that, because the district "adjusted" each petitioner's contractual term of employment, they were "between two successive academic years" after June 6, 1982, and before the last day each was to work according to his contract. The district may have no contractual liability to petitioners if it "adjusts" the work year under a contract which provides that it is subject to the local budget law, the agreement between principals and the district board and the availability of funds. Petitioners, however, are not barred from unemployment benefits just because they may not have an action against the district for breach of contract. The purpose of the unemployment compensation law is to provide a substitute income for an eligible unemployed person, and it should not be read restrictively. *Mallon v. Employment Division,* 41 Or App 479, 483, 599 P2d 1164 (1979). EAB erred when it concluded that the district's contractual right to adjust each petitioner's work year determines whether petitioners were "between two successive academic years" after June 6.

ORS 657.167, as originally enacted in 1971, was modeled on the federal law, which then provided:

"An individual who performs services in an instructional, research, or principal administrative capacity for an educational institution or agency shall not be eligible to receive a payment of assistance or a waiting period credit with respect to any week commencing during the period between two successive academic years (or, when the contract provides instead for a similar period between two regular but not successive terms, during such similar period) if—

"(1)   such individuals performed services in any such capacity for any educational institution or agency in the first of such academic years or terms; and

"(2)   such individual has a contract to perform services in any such capacity for any educational institution or agency for the later of such academic years or terms." 26 USC § 3304, Part A, § 203(b).

*See Ashby v. Employment Division*, 21 Or App 265, 268, 534 P2d 1160 (1975).

In *Chicago Teachers Union v. Johnson*, 639 F2d 353 (7th Cir 1980), school teachers had been denied benefits under § 203(b). The board of education had terminated the teachers on June 9, three weeks earlier than scheduled, because of a lack of funds. The board argued, and the district court agreed, that the three-week period was "between two successive academic years," and so the teachers should not receive benefits. The Court of Appeals reversed, ruling that, when the Board advanced each teacher's termination date from June 29 by 20 days, "the reasonable expectation of the teachers of continuous employment was frustrated because funds ran out." *Chicago Teachers Union v. Johnson, supra*, 639 F2d at 357. Congress, the court said, could not have intended to exclude from coverage a period of time which, from the teachers' standpoint, was obviously a time of unemployment. The court quoted with approval from *McKeesport Area School District v. Commonwealth Unemployment Compensation, Board of Review*, 40 Pa Cmwlth 334, 397 A2d 458 (1979):

"Moreover, the phrase in parenthesis which follows the term 'academic years' in Section 203(b) refers to a '*similar* period between two regular * * * terms' * * * indicating that Congress considered an 'academic year' to be a regular, scheduled period, as opposed to an irregular, unpredictable period. The period of unemployment involved here did not occur between two regular periods; in fact, the period of

unemployment arose suddenly and virtually without warning."

Here, the respective layoff period of each petitioner was irregular, sudden and virtually without warning and petitioners' expectations of employment were frustrated.

■     EAB erred in interpreting "between two successive academic years" to include the unexpected layoff period that preceded petitioners' regularly scheduled period of unemployment. We conclude, for purposes of ORS 657.167, that the period of unemployment "between two successive academic years" of petitioners Hayes and Johnstone began on June 21, and of petitioner Dyson on June 30, not in each case on June 7, 1982, as the referee found. The regular periods of unemployment which the petitioners reasonably anticipated because of the terms of each of their contracts began on those later dates, and they are eligible for benefits during the layoff period after June 6 which preceded their regular scheduled period of unemployment.

■     The Division argues that, because petitioners received their salary in twelve equal monthly instalments and continued to receive it after June 6, 1982, each received a "guaranteed wage" and was not entitled to benefits after June 6. *See* ORS 657.205(1) and (2).[3] A "guaranteed wage" under ORS ch 657 is the assurance by an employer that a covered

---

[3] ORS 657.205 provides in part:

"(1)  Subject to the provisions of subsections (2), (3) and (4) of this section, an individual is disqualified for benefits for any week with respect to which the individual is receiving, will receive, or has received:

"(a)  Remuneration as a dismissal or separation allowance, or as a guaranteed wage.

"(b)  A governmental or other pension, retirement or retired pay, annuity, or other similar period payment based on the previous work of the individual, if payment is received under a plan maintained or contributed to by a base year employer of the individual.

"(2)  In determining disqualification for any week under subsection (1) of this section, if the remuneration and payments referred to in paragraphs (a) and (b) of subsection (1) of this section cover a period greater than and include such week, a pro rata share of such remuneration and payments shall be apportioned to such week or weeks. Such payments made in a lump sum upon separation or in weekly or other instalments shall be considered as payments with respect to weeks following separation without regard to the existence or lack thereof an employe-employer relationship during the weeks such pay is allocated pursuant to the assistant director's rules."

worker will draw a fixed wage per year, divided into a set number of pay periods. *Gollender v. Morgan,* 17 Or App 104, 111, 520 P2d 453 (1974); *Hens v. Employment Division,* 60 Or App 419, 423, 653 P2d 1301 (1982). The Division acknowledges that the district decreased each petitioner's yearly salary by the number of working days lost. EAB erred when it concluded that petitioners received guaranteed wages for the period of time after June 6.

This decision is not inconsistent with *Zeek v. Employment Division, supra, n 2,* where the petitioner assigned as error EAB's conclusion that she had "reasonable assurances" under ORS 657.221 of returning to work in the succeeding academic year. Zeek asserted that she was on a summer recess "between two successive academic years," and all parties there agreed that she was. She argued that the assurances of reemployment for the next calendar year that she received were qualified and therefore not "reasonable." We concluded that EAB correctly interpreted the statutory term "reasonable assurances" and that she had received such assurances.

Petitioners do not argue that under ORS 657.167 they did not have "reasonable assurances" that they would be reemployed in the succeeding academic year. They argue instead that their period of layoff until their last day of work provided in each of their contracts was not "between two successive academic years." In *Zeek,* contrary to the facts here, there was no evidence that the petitioner had a contract of employment to work the days for which she claimed benefits.

Furthermore, ORS 657.167(1) contains language following the phrase "between two successive academic years," which reads "or, when an agreement provides, instead, for a similar period between two regular terms whether or not successive." Relying on a similar phrase in 26 USC § 3304, Part A, § 203(b), the court in *Chicago Teachers Union v. Johnson, supra,* concluded that Congress, in referring to the period "between two successive academic years," was referring to regular summer recesses rather than irregular, unpredictable periods of unemployment. In *Zeek,* however, the governing statute, ORS 657.221, covering school employes

who are not in an instructional, research or principal administrative capacity, does not contain the emphasized phrase. Accordingly, the legislature's intent in enacting ORS 657.221 was not identical to its intent in enacting ORS 657.167(1), and the reasoning of *Chicago Teachers,* which is directly applicable to this case, is not applicable to *Zeek.* Moreover, in *Zeek* the petitioner's summer break would have regularly occurred if the district had stayed on the traditional school year. Zeek's period of unemployment, caused by the change from the 12-month academic year to the traditional academic year, was not, in the same sense as is petitioners' here, irregular or unpredictable. Each petitioner's layoff was unlikely to reoccur, unless the district's levy were to fail again.

Reversed and remanded for reconsideration.