Argued and submitted October 17, 1983, affirmed January 18, 1984

FRIEDLANDER,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(82-AB-2147; CA A27130)

FRIEDLANDER,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(82-AB-2080; A27131)
(Cases consolidated)

676 P2d 314

Joe Gordon McKeever, Eugene, argued the cause for petitioner. With him on the briefs was Johnson, McKeever & Cram, Eugene.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondents Employment Division and University of Oregon. With him on the briefs were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

No appearance for respondent Lane Community College.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

**WARDEN, J.**

In these consolidated cases, claimant appeals two orders of the Employment Appeals Board (EAB) that denied him unemployment compensation for a period from June 20 to September 28, 1982, on the basis of a statutory provision denying benefits to school instructors for periods between academic years. We affirm.

In September, 1979, claimant was employed by the University of Oregon (University) under a regular employment contract as an instructor in the School of Music. That contract expired at the end of the spring term of 1980, and because of budget cuts claimant's regular position was eliminated. In September, 1980, claimant was employed by the University as an instructor through a program in the Division of Continuing Education (DCE). Classes in DCE were supported solely by extra fees paid by students who enrolled in them. Generally, classes were advertised in published class schedules, and those for which minimum enrollment levels were not met were cancelled. Claimant was employed by the University under the DCE system during the 1980 fall term, each term of 1981, and the 1982 winter and spring terms. For the 1982 summer term claimant advertised three of his classes. None of the classes achieved minimum enrollment, but only two of them were cancelled. Claimant taught one workshop during the week of July 19-23. He testified that there was no actual summer recess for the DCE but that only about half of the instructors at the School of Music teach during the summer term. He agreed that the generally recognized academic year at the University consists of the fall, winter and spring terms.

Lane Community College (LCC) also employed claimant as an instructor during part of 1981 and 1982. He taught one workshop at LCC during the fall term of 1981 and one during the winter term of 1982. Like claimant's employment with the University through DCE, his classes were conducted only if they drew a minimum student enrollment. Because of a timing problem in changing the workshop to a regular class, claimant was not employed by LCC during the 1982 spring term, nor was he employed by LCC during the summer of 1982. The record contains no evidence as to whether LCC offered summer classes.

In both the University's DCE program and at LCC, the classes to be offered by an instructor were advertised in the institutions' respective catalogues or schedules before the beginning of the term in which the class would be offered. Both the University and LCC advertised claimant's classes for the 1982 fall term. Claimant submitted to the University the classes that he planned to teach. He knew that his classes would be advertised in the University's fall schedule. He and the director of the University's DCE program discussed his employment at the University in the fall of 1982, and he was never told that he would not be considered for work in the fall term of 1982. At LCC, the chairman of the Performing Arts Department orally advised claimant that he planned to have him teach in the fall of 1982. LCC also sent him a letter on May 27, 1982, advising that LCC intended to offer him employment beginning the fall term on the same basis as his employment before the summer recess.

On June 22, 1982, claimant filed a claim for unemployment insurance benefits, naming the University and LCC as employers. The claims were processed separately for the two institutions. On August 13, 1982, the Employment Division issued an administrative decision allowing benefits to claimant on his claim against LCC. On September 24, 1982, it issued a second administrative decision denying benefits on his claim against the University on the basis that he had reasonable assurance of returning to work there for the 1982 fall term. After separate hearings, the referees denied benefits on both claims on findings that claimant had reasonable assurances of returning to work for the 1982-83 academic year for both LCC and the University. EAB adopted the referees' decisions and affirmed them.

■ Claimant appeals both EAB orders. Because the facts underlying the orders are interrelated, and the interests of both employers are involved, we consolidate the appeals for purposes of review.[1]

---

[1] Only one claim for unemployment compensation is involved in these two cases, although the interests of two employers are implicated. Under these circumstances, both employers would be subject to a proportional assessment if claimant was eligible for benefits. *See* ORS 657.471(1). Therefore, the cases merit consolidated treatment.

Claimant contends that, with the exception of the week of July 19-23, he was eligible for unemployment insurance benefits for the period between the end of his last class at the University in June, 1982, and the beginning of his fall term classes at the University and at LCC in September, 1982. The basis of his challenge is that EAB erroneously applied ORS 657.167(1):

> "Benefits based on service in an instructional, research or principal administrative capacity for a school, college, university or other educational institution shall be payable to an individual in the same amount, on the same terms and subject to the same conditions as benefits payable on the basis of other service subject to this chapter, except that benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years or, when an agreement provides instead for a similar period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract and if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms. * * *"

Claimant contends that his unemployment claim is not based on a period "between two successive academic years." He also contends that, even if the time in question is such a period, he had no reasonable assurance of employment for the fall term of 1982. We discuss each of the contentions in turn.

■ Claimant makes several arguments in support of his contention that he was not between academic years. First, he argues that, because he was employed by the University during the summer of 1981, he was a year-round employe and that the summer of 1982 was not a period between academic years as applied to him. Second, he argues that the University operated some classes during the summer of 1982 and therefore that period was not between academic years as applied to the University, because it did not completely shut down for the summer term. The basis of his argument is that the statutory terminology "academic year" should be defined in light of the particular scheduling practices of each individual instructor and each institution. We disagree.

■■ The question whether claimant's work hiatus during the summer of 1982 occurred between successive academic years is a question of statutory interpretation for this court to resolve. *See McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979); *McIntyre v. Employment Division,* 41 Or App 189, 598 P2d 313, *rev den* 287 Or 641 (1979). That question turns on the meaning to be given the words "academic year," which this court has not previously defined. Our previous decisions construing ORS 657.167, however, use the term in its ordinary meaning of annual sessions extending from fall to spring. *See Hayes v. Employment Div.,* 65 Or App 506, 672 P2d 352 (1983); *Johnson v. Emp. Div.,* 59 Or App 626, 651 P2d 1365 (1982); *Mallon v. Emp. Div.,* 41 Or App 479, 599 P2d 1164 (1979). Additionally, in applying ORS 657.221(1), which similarly denies non-academic employes of educational institutions unemployment benefits for periods between successive academic years, this court has upheld an EAB determination "that the traditional academic year is an 'academic year' within the meaning of ORS 657.221, even though it replaced a 12-month school year * * *." *Zeek v. Employment Div.,* 65 Or App 515, 520, 672 P2d 349 (1983). We have concluded that a claimant who had worked year around for an educational service district and whose job was subsequently changed to a 10-month position, with June 15 to August 21 off, was "seeking unemployment compensation for a period between two successive academic years." *McIntyre v. Employment Division, supra,* 41 Or App at 191. Although we concluded that the claimant there was not an employe of an educational institution, in *dicta* we stated that, notwithstanding her prior history of summer work, ORS 657.221(1) would bar her claim if she had been such an employe.[2]

Claimant agrees that the generally recognized academic year includes only the fall, winter and spring terms, and

---

[2] We also find persuasive the court's decision in *Claim of Lintz,* 89 App Div 2d 1038, 454 NYS2d 346 (1982), construing a New York statute substantially identical to ORS 657.167 under closely analogous facts. The claimant, an adjunct professor at New York University, had an assurance of fall employment and also chose to work part-time during a school summer session. When her summer work terminated, she applied for unemployment benefits, claiming she was not between two successive academic years, but, rather, in the middle of an academic term. She was awarded benefits by the review board, but the court reversed, finding that, even though the claimant chose to teach part-time during the summer session, she nonetheless was between academic years.

we find nothing to indicate that the legislature intended the term "academic year" to embrace anything other than its usual meaning. We conclude that "academic year" as used in ORS 657.127 means the traditional fall-through-spring sessions of an educational institution. The fact that claimant worked in the summer of 1981 and hoped to work in the summer of 1982 and the fact that the University operated on a limited basis during summer terms do not preclude this conclusion. That an employe of an educational institution may choose to work during what is traditionally vacation time does not make it a part of the academic year, and an abbreviated summer session can and regularly does co-exist with a traditional academic year. EAB correctly determined that claimant's summer suspension of work constituted, for purposes of ORS 657.167, a period between academic years.[3]

■ ■ We next consider claimant's contention that the board erred in holding that he had reasonable assurances of employment in the fall of 1982 at both LCC and the University. His sole argument is that he had no reasonable assurance, because his employment at both institutions was contingent upon minimum student enrollment for his classes and neither institution could guarantee that a sufficient number of students would sign up for his classes.

Under ORS 657.167, unemployment benefits for recess periods must be denied if a claimant has a "contract or a reasonable assurance" of applicable employment at any educational institution in the following academic year. The statutory language "reasonable assurance" has been defined by the Employment Division in OAR 471-30-075.[4] What is required is some evidence of mutual commitment or assurance between the claimant and the employer, so that the claimant can be said to have a reasonable expectation of returning to

---

[3] Claimant also argues that he was not between *successive* academic years with respect to LCC, because he was not employed by LCC during the spring term of 1982. Because the University was claimant's primary employer during the spring term of 1982, we do not consider this contention.

[4] OAR 471-30-075 provides:

"With respect to the application of ORS 657.167 and ORS 657.221, 'reasonable assurance' means a written contract, written notification, or any agreement, express or implied, that the employe will perform services in the same or similar capacity for any educational institution during a subsequent academic year or term or in the period immediately following a recess period."

employment in the next academic year. In *Zeek v. Employment Div., supra,* we affirmed an EAB holding "that an assurance of public employment is reasonable even if it is subject to the availability of funds and the consequent effect of a reduction-in-force provision of a union contract." 65 Or App at 519. *See Neshaminy Sch. Dist. v. Com., Unemploy. Comp.,* 57 Pa Cmwlth 543, 426 A2d 1245 (1981); *Jennings v. Employment Sec. Dept.,* 34 Wash App 592, 663 P2d 849 (1983); *cf. Ashby v. Employment Division,* 21 Or App 265, 534 P2d 1160 (1975) (former version of ORS 657.127 that did not contain "reasonable assurance" language required a binding contractual obligation). In determining whether a claimant had a reasonable assurance of reemployment, the totality of the employment relationship, including the claimant's prior history of fall employment, must be examined. *See Neshaminy Sch. Dist. v. Com., Unemploy. Comp., supra,* 57 Pa Cmwlth at 546.

We conclude that there is substantial evidence to support the conclusion that claimant did have a reasonable assurance of employment for the 1982 fall term with both LCC and the University. He initiated the advertisement of his classes for the fall of 1982 in the University's catalogue, and his fall classes were advertised by LCC with his knowledge and consent. LCC informed him both orally and by letter of its intent to employ him in the fall term. Claimant discussed fall employment with the University's DCE chairman as well, and there was a mutual commitment between him and that employer to reemploy him in the fall on the same basis as he had been employed in previous years. The circumstance that claimant's classes were contingent upon minimum student enrollment does not dictate a contrary conclusion.[5] His class at LCC had been sustained by adequate student enrollment in the previous fall and winter terms in which it was offered. In each term of the University's 1981-82 academic year, his classes were sufficiently enrolled. That his classes had drawn

---

[5] In *Johnson v. Emp. Div.,* 59 Or App 626, 632, 651 P2d 1365 (1982), we noted that a substitute teacher had a reasonable assurance of reemployment if he remained on the active substitute list for the ensuing year. No guarantee of employment was required. Claimant's potential for reemployment is no less certain than that of a substitute teacher, whose employment is contingent upon temporary vacancies in teaching positions.

sufficient enrollment to be held in the past makes it reasonable to expect that they would be again and supports a determination that he had reasonable assurances of fall employment in 1982. EAB did not misapply ORS 657.167 when it found that claimant had reasonable assurances of employment in the fall of 1982 with both LCC and the University.

Because claimant was seeking unemployment benefits for a period between two successive academic years and because he had a reasonable assurance of employment in the succeeding academic year, he falls squarely within the ineligibility provisions of ORS 657.167. EAB did not err in denying him benefits for the period June 20 through September 28, 1982.

Affirmed.