MERGED AREA (EDUCATION) VII
a/k/a Hawkeye Institute of
Technology, Petitioner-Appellee,

v.

IOWA DEPARTMENT OF JOB
SERVICE, Respondent,

and

J.B. Grier, L.M. McDaniel, J.D. Golden, C.
Hohl, R. Schultz, D.J. Hanisch, S.H.
Williams, A.Y. Parson, J.T. Bailiff, G.L.
Davis, N.C. Wyte, R.E. Lovejoy, C.K.
Hesseling, J.C. Rider, Intervenors-Appellants.

MERGED AREA (EDUCATION) VII
a/k/a Hawkeye Institute of
Technology, Petitioner-Appellee,

v.

IOWA DEPARTMENT OF JOB
SERVICE, Respondent,

and

Gene L. Davis, Jon J. Hamilton, Nicholas C. Wyte, and Cassandra K.
Hesseling, Intervenors-Appellants.

No. 84–561.

Court of Appeals of Iowa.

Feb. 26, 1985.

Becky S. Knutson and James L. Sayre of Sayre & Gribble, P.C., Des Moines, for intervenors-appellants.

Sydney A. Thomas of Mosier, Thomas, Beatty, Dutton, Braun & Strack, Waterloo, for petitioner-appellee.

Heard by OXBERGER, C.J., and SNELL and SCHLEGEL, JJ.

SCHLEGEL, Judge.

Appellants appeal a district court judgment on judicial review that reversed the Iowa Department of Job Service's (Job Service) decision to award unemployment compensation benefits. They argue that the district court erred in determining that Iowa Code section 96.4(5)(b) precludes them from receiving benefits. We affirm the district court.

Appellants are fifteen teachers and instructors employed by Merged Area (Education) VII a/k/a Hawkeye Institute of Technology (H.I.T.). The procedures that brought all these individuals before the court are complex, but the facts underlying their claims are essentially the same. Appellants were employed by H.I.T. on a twelve-month basis. They were required to work 261 days, doing some of that work in each month of the year.

In early 1981 the H.I.T. administration decided that H.I.T. should eliminate certain classes in the summer months. Since nearly three months of classes were going to be eliminated, it was necessary to correspondingly change the terms of the instructors' employment contracts. This change of terms was unilateral. Therefore, the administration was required to send appellants notice pursuant to Iowa Code section 279.15 stating that their employment contracts would not be automatically continued when their terms expired. *See* Iowa Code §§ 279.13, .15 (1981). Accompanying the notice to each instructor was a separate letter indicating that H.I.T. desired to continue the employment relationship, but that the new contracts would have a *modified* length of term.

H.I.T. later submitted contracts that ran from July 1, 1981, to June 30, 1982. The number of work days was reduced to 181, with work to begin in late September, eliminating the previously-contracted summer instructional period. Thus, instructional time and workload was reduced to approximately 77½% of the previous contract workload. H.I.T. imposed pay reductions which corresponded to the reduced workload. Each instructor received an immediate 10% reduction in pay, and was advised that H.I.T. would recover an additional 10% by refusing to extend negotiated raises in future contract years. Each of the individual instructors accepted the modified contract.

The contracts provided for twelve monthly payments beginning in September. Thus, although the instructors were under contract during the summer of 1981, they received no pay at that time. Rather, their pay was deferred to the following summer.

Appellants applied for unemployment compensation benefits in July, 1981. H.I.T. contested payment of benefits. On July 22, 1981, a hearing officer denied benefits, finding that appellants were individuals performing in an instructional capacity, whose unemployment period occurred between two successive academic years. The hearing officer reasoned that under these facts, Iowa Code section 96.4(5)(b) precluded payment of benefits.

The case was then reviewed by the Job Service Appeals Board. The Appeals Board awarded benefits. In reaching this result, the Appeals Board cited the definition of "new work" that had been adopted in interpreting section 3304(a)(5)(B) of the Federal Unemployment Tax Act. 26 U.S. C.A. § 3304(a)(5)(b) (1979). That definition provides in part:

> [A]n offer of new work includes ... (3) an offer by an individual's present employer of ... (b) different terms or conditions of employment from those in his existing contract.

The Appeals Board reasoned that the contracts signed by appellants called for the performance of "new work," and that section 96.4(5)(b) does not apply when the applicant is offered "new work" instead of comparable employment.

274

Appellants Davis, Wyte, Hamilton, and Hessling were not affected by the ruling of the Appeals Board. They were awarded benefits in separate decisions by a hearing officer. The hearing officer did not specifically mention "new work" in those decisions. In each case, however, benefits were awarded because the terms of the new contract differed from the terms of the previous contract.

On judicial review the district court reversed the decision of the Appeals Board. The court held that section 96.4(5)(b) specifically prohibits appellants from receiving benefits, and that the Job Service erred in applying the "new work" concept to situations covered by section 96.4(5)(b). The district court also reversed the decisions pertaining to appellants Davis, Wyte, Hamilton, and Hessling.

■■■ I. *Scope of Review.* Pursuant to Iowa Code section 17A.20 (1983), this court's duty in reviewing a decision of the district court is to correct errors of law made by the district court. *Jackson County Public Hospital v. PERB*, 280 N.W.2d 426, 429 (Iowa 1979). The district court, when exercising its powers of judicial review under section 17A.19, is itself functioning in an appellate capacity to correct the errors of law specified in section 17A.19(8). *Id.* In order to determine whether the district court correctly reviewed the agency decision, this court applies the standards of section 17A.19(8) to the agency action. If this court's conclusions are the same as the district court's, affirmance is required; if not, reversal may be in order. *Id.* at 429-30.

II. *Applicability of Section 96.4(5)(b).* The sole issue in this appeal is whether section 96.4(5)(b) of the Iowa Code (1981) prohibits appellants from receiving benefits. That section states:

b. Benefits based on service in employment, ... in an instructional, research, or principal administrative capacity for an educational institution operated by a government entity ..., shall not be paid to an individual for any week of unemployment which begins during the

period between two successive academic years or terms, (or, when an agreement provides instead for a similar period between two regular but not successive terms, during such period) to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution the second of such academic years or terms, or during a period of paid sabbatical leave, provided for in the individual's contract, . . . .

Iowa Code § 96.4(5)(b) (1981). It is undisputed that appellants worked in an instructional capacity for an educational institution operated by a government entity. Thus, this section prohibits an award of benefits if: (1) the unemployment began during a period between successive academic terms; (2) if appellants worked during the first term and had a contract or reasonable assurance that appellants would work during the second term; (3) in any such capacity for an educational institution.

Appellants' unemployment did begin in the period between two successive academic terms. Appellants worked under their 1980–81 contracts until June 30, when those contracts expired. The scheduled academic term listed in their contract had also expired at that time. The new academic term was not scheduled to begin until late September. This situation is thus different from the cases *Chicago Teachers Union v. Johnson*, 639 F.2d 353 (7th Cir. 1980), and *Hayes v. Employment Division*, 65 Or.App. 506, 672 P.2d 352 (1983), in which individuals were laid off before the academic terms provided for in their contracts had expired.

■■ All of the appellants had worked at H.I.T. during the 1980–81 term, and all had received reasonable assurance that they would be employed during the 1981–82 term. In fact, all of them signed contracts for the latter term. The question that remains is whether the new contracts provided for work "in any such capacity," as that

phrase in section 96.4(5)(b) should be construed.

Appellants contend that "such capacity" should be construed to require terms and conditions of employment substantially similar to those in the previous academic term. They argue that the contracts of employment in this case were not substantially similar because of the reduced work requirements and pay. We cannot accept the arguments that these differences are sufficient to negate the operation of section 96.4(5)(b).

We believe that appellants were employed in substantially the same capacity during both terms. The nature and scope of their duties had not been changed. They were working full-time during the academic term. True, they were only required to do 77½% as much work as before, at 80–90% of the pay. This difference, however, was due to a shortened academic term which, in effect, provided appellants with a summer vacation, and therein lies the key to construing the phrase "such capacity."

Section 96.4(5) was enacted to conform with the requirements of 26 U.S.C. section 3304 so that certain federal tax credits would be available to employers. Subsection (a)(6)(A)(i) of 26 U.S.C. section 3304 requires state compensation programs to exclude school teachers from receiving benefits between successive academic terms or other normal vacation periods.

The intent to prohibit teachers from receiving unemployment compensation is manifest in the Senate Report that explains the provision in question.

There is, however, one distinctive characteristic of the contractual employment relationship between the instructor, researcher or administrative employee and the institution which led the committee to include a special provision in the bill. It is common for faculty and other professional employees of a college or university to be employed pursuant to an annual contract at an annual salary, but for a work period of less than 12 months. The annual salaries are intended to cover the entire year, including the summer periods, a semester break, a sabbatical period or similar nonwork periods during which the employment relationship continues.

The House bill permitted the States to prescribe the extent to which compensation would be paid during the summer vacation period. *The committee felt that Federal law should preclude payment in such situations.* The committee bill would, therefore, provide a mandatory limitation on the payment of compensation based on service in an instructional, research or principal administrative capacity for an institution of higher education. *The Committee bill would specifically prohibit the payment of compensation* based on service in any such capacity *during the summer semester break,* sabbatical period, or a similar nonwork period during which the employment relationship continues.

S.Rep. No. 752, 91st Cong., 2d Sess. (1970), *reprinted* in 1970 U.S.Code Cong. & Ad.News 3606, 3620 (emphasis added). In light of this intent, Iowa Code section 96.-4(5)(b) must apply when the only change in employment capacity is creation of a summer vacation that did not previously exist. The district court correctly ruled that the Job Service Appeals Board erred in applying the "new work" doctrine in this case. We must therefore affirm.

AFFIRMED.