[No. 4182–II. Division Two. February 27, 1981.]

Betty Birgenheier, et al, *Appellants,* v. The Department of Employment Security, *Respondent.*

*Albert P. Germano,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Gary Ikeda* and *Charles R. Hostnick, Assistants,* for respondent.

PETRIE, J.—Forty–nine noncertificated employees of Tacoma School District No. 10 appeal from a trial court's order affirming a decision of the Commissioner of Employment Security Department which denied them Special Unemployment Assistance (SUA) benefits for the 1977 summer period between academic sessions. We hold that 47 appellants performed substantial services in an "instructional capacity" in the first of those academic sessions and had no "contract to perform services in such capacity" for the second of those academic sessions. The two remaining appellants, John Washington, a security patrol officer, and Norma Clark, a cook manager, were employed in "other than in instructional, research, or principal administrative capacity" for the first of those academic sessions, but they had no "reasonable assurance" that they would be employed in that capacity for the second of those academic sessions. Accordingly, as to all appellants, we reverse the Commissioner's determination that they were ineligible for SUA benefits, pursuant to Emergency Jobs and Unemployment Assistance Act of 1974, Pub. L. No. 93–567, § 203, 88 Stat. 1845, as amended by Unemployment Compensation Amendments of 1976, Pub. L. No. 94–566, § 603(a), 90 Stat.

2667 for the week ending June 18, 1977, and until otherwise ineligible between terms.

Congress established the temporary SUA program for workers unemployed during a period of aggravated unemployment and not otherwise eligible for unemployment allowances under any other law. 26 U.S.C.A. § 3304, Historical Note § 201, at 359. The specific provisions of the federal program we are called upon to interpret are codified at 26 U.S.C.A. § 3304, Historical Notes § 203(b), (c), at 360–61 which provide eligibility standards as follows:

"(b) An individual who performs services in an instructional, research, or principal administrative capacity for an educational institution or agency shall not be eligible to receive a payment of assistance or a waiting period credit with respect to any week commencing during the period between two successive academic years (or, when the contract provides instead for a similar period between two regular but not successive terms, during such similar period) if—

"(1) such individual performed services in any such capacity for any educational institution or agency in the first of such academic years or terms; and

"(2) such individual *has a contract* to perform services in any such capacity for any educational institution or agency for the later of such academic years or terms.

"(c) An individual who performs services for an educational institution or agency in a capacity (other than an instructional, research, or principal administrative capacity) shall not be eligible to receive a payment of assistance or a waiting period credit with respect to any week commencing during a period between two successive academic years or terms if—

"(1) such individual performed such services for any educational institution or agency in the first of such academic years or terms; and

"(2) there is a *reasonable assurance* that such individual will perform services for any educational institution or agency in any capacity (other than an instructional, research, or principal administrative capacity) in the second of such academic years or terms.["]

(Italics ours.)

■ Thus, our first inquiry is whether any of these employees performed services in an instructional capacity. The Commissioner held that none of them performed such services, based substantially on a Commissioner's decision previously issued, *In re Barr,* Comm'r Dec. 253 (1976).[1] *Barr* announced the rule that a noncertificated employee employed as a teacher's aide did not perform services in an instructional capacity because she could not qualify as a "teacher" under this state's statutes unless she was "the holder of a valid teacher's certificate". RCW 28A.67.010. We hold that congressional use of the generic expression, "services in an instructional . . . capacity," was intended to embrace a more inclusive group of employees than the professional "teacher" who qualifies as such by reason of being "certificated."

Thirty–nine of the appellants were employed as teacher's aides. None of them had contracts for the ensuing term which began in September 1977. Typically their job assignments, as expressed in supervisory evaluation forms, included instructing students, preparing instructional materials, planning and preparing specialized lessons, and testing students. Obviously, these assignments are conducted under the supervision of a qualified (certificated) teacher. Nevertheless, subjection of an employee to direct supervision by a more qualified employee does not alter the essential nature of the first employee's job assignments. We hold the Commissioner erred as a matter of law by declaring the 39 teacher's aides were ineligible for SUA benefits because they were not certificated employees of the school district.

Five other appellants were employed as community liai-

---

[1] When Ms. Barr claimed SUA benefits section (c) of Historical Note 203 had not yet been enacted. Accordingly, *Barr* was decided on the basis of the ineligibility standards in Historical Note 203(b) only. At that time there were no ineligibility standards for employees who performed services other than in an instructional capacity. Therefore, Ms. Barr was ruled eligible for SUA benefits precisely because she did not perform services in an instructional capacity.

son officers in paraprofessional capacities. Each parapro-
fessional's responsibilities, as expressed in district informa-
tional bulletins, included the following:

> Assists in instructional activities, which are in general
> terms, defined as the reinforcement, review and readiness
> of specific learning activities initiated and supervised by
> a certificated staff member.

Indeed, the record reflects that these community liaison
officers performed precisely those instructional services.
Obviously, therefore, they performed services in an instruc-
tional capacity. To be sure, other responsibilities of para-
professionals included "noninstructional activities." Indeed,
the same could be said of certificated teachers and teacher's
aides. Nevertheless, Congress clearly intended to establish
two different eligibility tests; one for employees who per-
form services in an instructional capacity (contractual
guaranty of reemployment in the following academic year);
and the other for employees who perform services in a
capacity other than instructional (reasonable assurance of
reemployment in the following academic year).

One interpretation of congressional intent would hold
that specific services performed by each claimant for SUA
benefits should be analyzed quantitatively to determine
whether a majority (or some other reasonable fraction) of
the claimant's services were instructional or noninstruc-
tional. Another interpretation of congressional intent would
lead to an examination of whether some of those services
could reasonably and properly be classified as instructional
without resort to attempted quantification as to any given
claimant over any given time period; other employees, *i.e.,*
those who performed *no* instructional services, would be
otherwise classified.

In *Barr,* the Commissioner chose the former interpreta-
tive method and partially relied upon an advisory letter of
the United States Department of Labor dated June 7, 1976.
That letter stated generally that "instructional services"
would include services performed by teachers, substitute
teachers, teacher's aides (if such services performed are

*primarily* in an instructional capacity), tutors and individuals who direct students in independent research and learning. We are more impressed by another provision of the advisory letter which, prior to enactment of subsection (c) of Historical Note 203, described the types of personnel who were not intended (under the instructional capacity eligibility provision then existing) to be declared ineligible for SUA benefits. That portion of the advisory letter (which admittedly expired on March 31, 1977) provided:

It should be noted that this denial [section 203(b), the only one which then existed] does not apply to other individuals of educational institutions or agencies who perform services in any other capacity such as *custodians, cafeteria employees, clerical staff, bus drivers, security personnel,* etc.

(Italics ours.)

It seems apparent to us that when Congress enacted section 203(c) in 1976 with no alteration of the language in section 203(b), it intended to establish an ineligibility provision for those types of employees as well as the professional and paraprofessional employees, but the custodial, clerical, transportation, and security personnel would be ineligible simply if they had "reasonable assurance" that they would be rehired in the following academic year.

We hold that the paraprofessional employees classified as teacher's aides, tutors, and community liaison officers, a substantial portion of whose services were of an instructional nature, were intended by Congress to have their eligibility for SUA benefits determined by the provisions of 26 U.S.C.A. § 3304, Historical Note § 203(b) both before and after enactment of subsection (c). *Accord, Schoenfeld v. Board of Review,* 163 N.J. Super. 584, 395 A.2d 528 (1978), *cert. denied,* 79 N.J. 492, 401 A.2d 247 (1979).

We turn then to the three employees whose job titles were, respectively, internal media librarian assistant, nurse's assistant, and physical therapy associate. The record reflects that the job titles for these employees are somewhat misnomers and that a substantial portion of

their actual duties included the performance of services normally assigned to teacher's aides or tutors. None of these employees had a contract of reemployment for the academic year beginning September 1977. Accordingly, we hold they too were not ineligible for SUA benefits when they applied for those benefits.

Finally, we turn to the cook manager and the security patrol officer. These two employees' duties embraced substantially the types of services implied from their job titles. We hold they were the types of employees whose ineligibility for SUA benefits was intended to be governed by section 203(c). Accordingly they would be ineligible for SUA benefits if there was "a reasonable assurance" that they would perform those duties again in September 1977.

■ The Joint Explanatory Statement of the Committee of Conference on Public Law 94–566, 5 U.S. Code Cong. & Ad. News 6033, 6036 (1976), sheds some light on congressional intent. The conference report explains as follows:

> Under the conference agreement, when a claim is filed by an individual on the basis of prior employment in an educational institution or agency for compensation for any week of unemployment between successive academic years or terms, it is intended that the State employment security agency shall obtain from the educational institution or agency a statement as to whether the claimant has been given notification with respect to his or her employment status. *If such claimant has been notified that he or she has a contract for, or reasonable assurance of, reemployment for the ensuing academic year or term, then the claimant may not be entitled to unemployment benefits until the educational agency or institution informs the State agency that there is no such reasonable assurance or contract for reemployment or until the employee is not, in fact, offered reemployment.*

(Italics ours.)

The process utilized by the department in the case at bench was to inquire of the school district whether the claimant will be returning to work when school resumes in the fall; *not* whether the claimant has been notified that he or she has a reasonable assurance of reemployment in the

fall.

The record reflects there was some doubt as to whether funding for each of these two positions would be available in the fall. The only indication in the record that reflects each claimant's reemployment potential in the fall is an unsigned, handwritten, affirmative response to the department's inquiry of the school district. These two claimants received no notice of reemployment from the school district until August 14, 1977.

We hold the appeal examiner's "conclusion" (subsequently affirmed by the Commissioner) that these two employees had a "reasonable assurance" of reemployment in September 1977 was clearly erroneous and should be reversed.

The trial court's order affirming the Commissioner's determination that these appellants were ineligible for SUA benefits because of the provisions of Public Law 94–566 for the week ending June 18, 1977 is reversed; and these appellants' claims are remanded to the Employment Security Department for further processing not inconsistent with this opinion.

Pursuant to the provisions of RCW 50.32.160, counsel for the appellants is awarded an attorney's fee in the amount of $3,000. This fee shall be payable out of the Unemployment Compensation Administration Fund.

REED, C.J., and PEARSON, J., concur.

Reconsideration denied March 19, 1981.

Review denied by Supreme Court September 3, 1981.