CITY OF MILWAUKEE, Appellant,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Kathleen Meingast, Helen Vick, Joanna Cobb, Elizabeth Hooser, Ellen Barczak and Ethel Wilson, Respondents-Petitioners.

Supreme Court

*No. 80–1558.    Argued February 2, 1982.—Decided March 2, 1982.*

(Also reported in 316 N.W.2d 367.)

For the Department of Industry, Labor and Human Relations there were briefs and oral argument by *Robertamarie Kiley,* Labor and Industry Review Commission, Madison.

For the appellant the cause was argued by *Patrick B. McDonnell,* assistant city attorney, with whom on the brief was *James B. Brennan,* city attorney.

BEILFUSS, C. J.   This is a review of a decision of the court of appeals reversing a judgment by the Circuit Court for Milwaukee County, Circuit Judge HUGH R. O'CONNELL. The circuit court affirmed a decision by the Department of Industry, Labor & Human Relations (DILHR) that school crossing guards employed by the City of Milwaukee were eligible to collect unemployment compensation benefits between school terms when they were not working and not paid.

The facts in this case are undisputed. The individual petitioners were employed by the City to serve as school crossing guards at various schools in Milwaukee. Their work year corresponded to the school year; they did not work during summer or vacation periods. Performing the duties of a crossing guard was the only job assignment of the petitioners. At the beginning of the 1978 summer recess, the crossing guards were laid off, with the assurance that they would be rehired when school began in the fall. All were actually reemployed by the City as crossing guards during the next school year.

The petitioners applied for unemployment compensation during the 1978 summer recess. DILHR determined that they were eligible for these benefits during the summer layoff period. The trial court affirmed this determination, but the court of appeals reversed, holding them ineligible.

The court of appeals construed sec. 108.04(17)(b), Stats. 1977, so as to deny petitioners' eligibility for unemployment compensation. Sec. 108.04(17)(b) reads:

"An employe who performs services for a nonprofit or public educational institution, other than an institution of higher education and other than in an instructional, research or principal administrative capacity, is ineligible for benefits based on such services for any week of unemployment which occurs during a period between 2 successive academic years or terms if such employe performed such services in the first such academic year or term and there is a reasonable assurance that such employe will perform such services in the 2nd such academic year or term."

The petitioners argued that this statute was ambiguous and that reference to outside sources was necessary to ascertain the legislative intent. By examining the legislative history of this statute, petitioners claimed that it became clear that only employees of the educational institution itself were made ineligible as a result of sec. 108.04 (17)(b), Stats. 1977. The court of appeals disagreed, holding that the statute was clear and unambiguous and, therefore, further inquiry into the legislative intent was improper. The court of appeals characterized the statute as follows: "The section very simply states that the individual must perform services for the institution to be excluded from coverage for the period in question. Nowhere in the section does it say the individual must also be employed by the institution to be so excluded. An employment requirement has no basis whatsoever in the text of the statute."

We do not agree that this statute is clear and unambiguous. The court of appeals found it so by not considering the first two words of the statute. In its opinion the court of appeals read the statute as: an individual

who "performs services for a nonprofit or public educational institution. . . ." In fact, the statute begins, "An employe who performs services. . . ." By changing the word "employe" to "individual," it is possible to conclude that an employment requirement has no basis in the test of the statute. However, if the statute is read as written, we deem it to be ambiguous. It is not clear whether one must be an employee of the educational institution or whether any employee of an employer other than a school, who performs services for a school, was meant to be covered under this statute. Because the statute is ambiguous it is appropriate to refer to external sources to construe it.

In this case we conclude from the statute and the available legislative history sources that the legislature intended the exemption to apply only to persons actually employed by the educational institution.

This result may seem somewhat incongruous by virtue of the fact that the petitioners were hired by the City only for guard duty at school crossings; they were assigned no other duties; that because of statutory organization, whether they were city employees or school board employees, they were paid by the city, and whether they were employed by the city or the school board their duties would be the same, and their "layoff" periods would be the same. This result, however, is compelled by a proper construction of the statute.

A preliminary guide to legislative intent may be found in the interpretation of the statute by DILHR. While courts are not bound by the department's construction of the statute, it is entitled to considerable weight.[1] In this case the department's interpretation is reasonable and consistent with the legislative history of the statute.

[1] *McGraw-Edison Co. v. ILHR Department*, 72 Wis. 2d 99, 102–03, 240 N.W.2d 148 (1976).

A review of the history of this statute demonstrates the correctness of the department's position. Initially, crossing guards were not covered by the unemployment compensation law of the state, although a governmental unit could voluntarily choose to cover them. Sec. 108.02(5) (f)7., Stats. 1951.[2] The 1973 statutes repealed this section, replacing it with sec. 108.04(18),[3] which covered crossing guards, but made them ineligible during school vacation periods.

In 1977 the statute was changed again to create sec. 108.04(17)(b). This section reads:

"An employe who performs services for a nonprofit or public educational institution, other than an institution of higher education and other than in an instructional, research or principal administrative capacity, is ineligible for benefits based on such services for any week of unemployment which occurs during a period between 2 successive academic years or terms if such employe performed such services in the first such academic year or term and there is a reasonable assurance that such employe will perform such services in the 2nd such academic year or term."

The analysis by the Legislative Reference Bureau of the bill leading to this statute states that the bill is explained by the analysis provided by the Council on Unemployment Compensation. This court has referred to

---

[2] The statute exempted "[s]ervice solely as a school crossing guard."

[3] "(18) SERVICE IN A SCHOOL YEAR POSITION. An individual whose service for a government unit other than a hospital or institution of higher education, in a regular annual school-year position is terminated or suspended at the start of or during a customary vacation period of the individual or of the school or schools in relation to which the services were performed shall not be eligible for benefits based on such service for any week which begins or ends during that vacation period. An individual employed as a substitute teacher shall also be ineligible for benefits based on such work during any vacation period."

notes made by the Council on Unemployment Compensation as an aid in determining legislative intent in past cases.[4] The council is statutorily required to submit recommendations regarding amendments to the unemployment compensation laws.[5] A prefatory note to Assembly Bill 938, which formed the basis of the new statute, indicates that the bill was prepared and unanimously recommended by the council. The council wrote that, "This bill makes a number of changes to maintain continued conformity with federal law requirements, which were changed by [the] enactment [by Congress] of the Unemployment Compensation Amendments of 1976, Public Law 94–566." The council's comments specifically regarding the new sec. 108.04(17)(b), Stats. 1977, were:

"NOTE: Changes the 'between-terms' denial for teachers to meet federal requirements. Adopts the 'between-terms' denial for school workers other than teachers, and benefit denial during school year recesses and holiday vacations, as permitted under federal law, subject to the effective date in SECTION 36 of this bill."

It is clear that sec. 108.04(17)(b), Stats. 1977, was intended to keep the unemployment compensation law in this state in conformity with the federal law requirements, as reflected in the 1976 amendments to the Federal Employment Compensation Law. The question in this case thus becomes—what was the effect of the federal amendments? These amendments are contained in

---

[4] *See, e.g., Milwaukee County v. ILHR Dept.,* 80 Wis. 2d 445, 452, 259 N.W.2d 118 (1977).

[5] Sec. 108.14(5)(a), Stats. 1977, provides:

"The council on unemployment compensation shall advise the department in carrying out the purposes of this chapter. The council shall submit its recommendations with respect to amendments of this chapter to each regular session of the legislature, and shall report its views on any pending bill relating to this chapter to the proper legislative committee."

Public Law 94–566, 90 U.S. Stat. 2670 (1976). As explained in an article in the 1978 Boston University Law Review, the purpose of these amendments was to strongly encourage state and local governments to extend unemployment compensation coverage to public employees to the same extent as private employees. If a state's unemployment compensation laws comply with federal standards, then private employers in the state receive a substantial tax credit on their federal unemployment tax payments. However, if the state laws fail to meet federal standards, then private employers in the state lose this tax credit and the state itself faces the loss of federal funds for unemployment compensation purposes.[6]

The 1976 federal amendments provide that between terms benefits can be denied to school employees who are engaged in instructional, research or principal administrative capacities.[7] It also gave states the option to extend this between-terms denial to other nonprofessional school employees. Wisconsin exercised this option when it created the statute at issue in this case, sec. 108.04(17) (b), Stats. 1977. As a guide to drafting legislation to conform to the 1976 amendments, the United States Department of Labor published a book, titled *Draft Language and Commentary to Implement the Unemployment Compensation Amendments of 1976–P.L. 94–566*. The preface stated that it was intended "as an aid to States in making appropriate and necessary amendments to their unemployment insurance laws." (Preface, p 1) This guide book makes clear that only school employees were subject to the between-terms denial of benefits. On page 53 of the draft provision, which Wisconsin adopted as sec. 108.04(17) (b), Stats. 1977, is discussed:

---

[6] *Federal Conditions and Federalism Concerns: Constitutionality of the Unemployment Compensation Amendments of 1976*, 58 Boston U. Law Rev. 275, 292 (1978).

[7] 26 USCA, pp. 341–42, sec. 3304(a)(6)(A).

"The second option draft provision, also effective for services performed after December 31, 1977, includes, in addition to the 'equal treatment' requirement of the first option, provision for the State, if it so desires, to deny benefits to employees of elementary and secondary schools in capacities other than the three professional capacities defined above. If the State chooses this option, the denial must apply between successive academic years or terms only if the individual performed such nonprofessional services for a school in the first of those terms and has a reasonable assurance of performing those nonprofessional services in the second of those years or terms.

"It should be noted that this optional provision for denial of benefits between terms to nonprofessional employees applies to employees of only elementary and secondary schools. The between terms denial to individuals engaged in an instructional, research, or principal administrative capacity applies to employees of institutions of higher education as well as employees of elementary and secondary schools."

The statutory intent is further elaborated by a supplement to the book dated December 7, 1976:

"8. *Question:*
"Some States employ individuals to provide school lunch programs in schools. These are State employees, not employees of the school. Would the between-term denial apply?
"*Answer:*
"No. The optional between-terms denial of section 33.04 (a) (6) (A) applicable to nonprofessional school employees applies to services for an educational institution (other than an institution of higher education). The employees described would be employees of the State working in but not for the educational institution. Therefore, between-terms and reasonable assurance would not be applicable to those employees.

"Those provisions would not apply to any individual who works in an educational institution but who is employed by an employing unit other than the educational institution. The entitlement to benefits of such workers should be determined by other applicable provisions in

the State law." (Supplement 1, *1976 Draft Legislation,* December 7, 1976, p. 21).

From these indicia of legislative intent it becomes apparent that only employees of schools were meant to be covered by the statute.[8] It is clear that the federal amendments were intended to cover only employees of educational institutions. Wisconsin intended to adopt the federal requirements in order not to lose the benefits of compliance with the federal standards.

This case is now of limited precedential value because, after the court of appeals' decision was rendered, the legislature acted to change the wording of sec. 108.04 (17) (b), Stats. 1977. It now reads:

"An employee of a nonprofit or public educational institution, other than institution of higher education, who performs services other than in an instructional, research or principal administrative capacity, is ineligible for benefits. . . ." (Laws of 1981).

Thus the legislature acted immediately to ensure that this statute would meet federal requirements.

Our analysis of the history of the statute leads us to conclude that the legislature intended only persons employed by an educational institution to be exempt from unemployment compensation eligibility by sec. 108.04 (17) (b), Stats., when it was originally enacted.

*By the Court.*—The decision of the Court of Appeals is reversed.

---

[8] Further support may be drawn from the title of sec. 108.04 (17), Stats. 1977. It reads, *"Employes of Educational Institutions."* While the title of a statute is not a part of the statute, since it was written by the revisor of statutes, not by the legislature, it has been looked to by this court as a limited source of legislative intent. *See Nottelson v. ILHR Department,* 94 Wis. 2d 106, 118 (n. 11), 287 N.W.2d 763 (1980); *Hanmer v. ILHR Department,* 92 Wis. 2d 90, 94 (n. 3), 284 N.W.2d 587 (1979).