[No. 5701–8–II. Division Two. September 5, 1984.]

JULENE R. ALEXANDER, ET AL, *Appellants,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, ET AL, *Respondents.*

*Edward E. Younglove III*, for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells* and *Wm. Michael Hanbey, Assistants,* for respondents.

PETRICH, C.J.—Julene Alexander and other individuals (claimants) who were employed by the Department of Social and Health Services (DSHS) at either the Washington State School for the Deaf or the Washington State School for the Blind appeal from the trial court's affirmance of the Department of Employment Security Com-

missioner's denial of unemployment benefits during the summer closure of the schools.

The primary issues are:

1. (a) Whether the written notices prescribed by the Unemployment Compensation Act, which state that the employee will perform services at the end of the summer months in order to exempt unemployment benefits to an employee off work during the summer, are void as to employees whose continued employment is governed by civil service. (b) Whether the notices did amount to written assurances of continued employment as required by the statute.

2. Whether the blind school and the deaf school, which provide custodial care and varying degrees of educational services to their residents, depending on the nature and extent of the emotional or physical disability of each resident, are educational institutions so as to invoke the statutory exemption denying unemployment benefits to the claimants during the summer recess for 1978 and 1979.

3. Whether the claimants, all of whom are civil service employees of DSHS, and whose services at the blind school and the deaf school are other than instructional, research or primarily administrative, are rendering services for an educational institution (other than an institution of higher learning) so as to be ineligible for unemployment benefits while not working during the 1978 and 1979 summer recess.

Additionally, the claimants contend that procedural errors invalidated the proceedings when the appeals tribunal considered additional evidence.

We affirm, holding that the Commissioner properly decided that the blind school and the deaf school are educational institutions for the purposes of the statute providing for unemployment benefits; that claimants were performing services for the respective schools; and that the notices were effective when applied to civil service employees and satisfied the statute. We also hold that the manner of considering additional evidence was proper.

During the school terms prior to the 1978 and 1979

summer recess, claimants were employees of DSHS, occupying positions within the Division of Developmental Disabilities of DSHS, and were employed either at the blind school or at the deaf school. Most of the claimants occupied positions in the "house parent" classification. Others were employed as cooks, food service aides, teacher's aides,[1] and nurses. The State Civil Service Law, RCW 41.06, applies to each of the claimants.

Prior to the 1978 and 1979 summer recess, claimants received written notices advising them of the summer closure, that they were being placed on "leave without pay" status and that they would be expected to resume their positions at a time to be specified later. A second written notice was issued to all claimants later in the summer informing them of the dates of resumption.

From the denial of unemployment benefits the initial claimants filed individual appeals to the appeal tribunal of the Department of Employment Security. On review sought by DSHS the Commissioner vacated the appeal tribunal's allowance of benefits to these initial claimants and remanded the matter to the appeal tribunal for further hearing. In these earlier proceedings the claimants sought judicial review and the Superior Court set aside the Commissioner's decision and directed the Commissioner to make a decision on the merits but authorized the Commissioner to order additional evidence. The Commissioner consolidated the initial claimants with a later group of claimants whose appeals were still pending before the appeal tribunal. The appeal tribunal after considering additional evidence denied benefits pursuant to the authority in former RCW 50.44.050. The Commissioner agreed. From the Superior Court's affirmance of the Commissioner's denial of benefits this appeal followed.

---

[1]Neither party disputes the classification of all claimants as noninstructional. *But cf. Birgenheier v. Department of Empl. Sec.,* 28 Wn. App. 911, 627 P.2d 546, *review denied,* 95 Wn.2d 1033 (1981) (teacher's aides fall under "instructional capacity").

RCW 50.32.120 specifies that judicial review of the Commissioner's decision is governed by the procedural requirements of RCW 34.04.130.[2] Furthermore, RCW 50.32.150 provides that the decision of the Commissioner shall be prima facie correct.

The claimants' appeal, claiming unlawful procedures at the administrative hearing and challenging the Commissioner's interpretation of the controlling statute, raises questions of law. The error of law standard of review applies and allows the reviewing court to essentially substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law. *Schuh v. Department of Ecology,* 100 Wn.2d 180, 667 P.2d 64 (1983); *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983); *Ciskie v. Department of Empl. Sec.,* 35 Wn. App. 72, 664 P.2d 1318 (1983).

The initial claimants first argue that the Commissioner proceeded unlawfully by ordering the consolidation of additional testimony, from specifically named witnesses, with a hearing of appeals then pending before the appeal tribunal. They maintain that this action permitted a rehearing or "second bite" instead of a presentation of additional evidence. Alternatively, they contend the evidence presented did not follow the Commissioner's directive as to the named witnesses.

Neither action constitutes an unlawful procedure.

---

[2]RCW 34.04.130(6) states:

"(6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(a) in violation of constitutional provisions; or

"(b) in excess of the statutory authority or jurisdiction of the agency; or

"(c) made upon unlawful procedure; or

"(d) affected by other error of law; or

"(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

"(f) arbitrary or capricious."

The Commissioner's authority to order additional evidence was explicitly recognized by superior court order, which claimants elected not to appeal, and by former RCW 50.32.080[3] which provided:

Commissioner's review procedure. After having acquired jurisdiction for review, the commissioner shall review the proceedings in question. Prior to rendering his decision, the commissioner may order the taking of additional evidence by an appeal tribunal to be made a part of the record in the case. Upon the basis of evidence submitted to the appeal tribunal and such additional evidence as the commissioner may order to be taken, the commissioner shall render his decision in writing affirming, modifying, or setting aside the decision of the appeal tribunal and shall mail his decision to the interested parties at their last known addresses.

Claimants are further precluded from now contesting any error on the facts by their decision not to challenge any of the Commissioner's factual determinations. *See Anderson v. Department of Ecology*, 34 Wn. App. 744, 664 P.2d 1278 (1983). There is no error of law.

Claimants' remaining arguments concern the legal interpretation of former RCW 50.44.050:[4]

Benefits payable, terms and conditions. Benefits based on services in employment covered by or pursuant to this chapter shall be payable on the same terms and subject to the same conditions as compensation payable on the basis of other service subject to this title: *Provided however,* That benefits based on service in an instructional, research or principal administrative capacity in an educational institution shall not be paid to an individual for any week of unemployment suffered after December 31, 1977, which commences during the period between two successive academic years or during the period between two terms, successive or otherwise, or during a period of paid sabbatical leave provided in the individual's contract if the individual performs the services in the first of

---

[3]Former RCW 50.32.080, amended by Laws of 1982, 1st Ex. Sess., ch. 18, § 8.

[4]Former RCW 50.44.050 has since been amended by Laws of 1980, ch. 74, § 2; Laws of 1981, ch. 35, § 12; Laws of 1983, 1st Ex. Sess., ch. 23, § 23.

the academic years or terms and there is a contract or a reasonable assurance that the individual will perform services in the capacity for any educational institution in the second of the academic years or terms; or during any nonwork period occurring during a term that does not diminish the individual's salary for the term. Any employee of a common school district who is presumed to be reemployed pursuant to RCW 28A.67.070 shall be deemed to have a contract for the ensuing term.

*Benefits shall not be paid based on services in any other capacity for an educational institution* (other than an institution of higher education as defined in section 15 of this amendatory act) *for any week of unemployment suffered after December 31, 1977, which commences during the period between two successive academic years or during the period between two terms, successive or otherwise, if the individual performs these services in the first of such academic years or terms and there is an individual contract or an individual written notice to the employee that the individual will perform services for an educational institution* (other than an institution of higher education as defined in section 15 of this amendatory act) *in the second of the academic years or terms*; or during any nonwork period occurring during a term that does not diminish the individual's salary for the term.

(Italics ours.) The claimants' remaining contentions are: (1) that written notices are ineffective when applied to civil service employees or, alternatively, that the notices actually received by the claimants did not constitute an enforceable assurance of reemployment; (2) the blind school and deaf school are not "educational institutions"; and (3) claimants did not provide services "for" an educational institution.

Our Legislature amended RCW 50.44.050 in 1977 to conform to Congress's amendment of the Federal Unemployment Tax Act, 26 U.S.C. § 3304(a)(6)(A)(i) and (ii).[5]

---

[5]26 U.S.C. § 3304(a)(6)(A)(ii) provided:

 (ii) with respect to services in any other capacity for an educational institution (other than an institution of higher education) to which section 3309(a)(1) applies, compensation payable on the basis of such services may be denied to any individual for any week which commences during a period between two successive academic years or terms if such

Construction of former RCW 50.44.050 must be consistent with the federal act. RCW 50.44.080; RCW 50.98.110. As an aid in construction, our Legislature specifically refers to a document entitled *Draft Language and Commentary to Implement the Unemployment Compensation Amendments of 1976 PL 94–566,* published by the United States Department of Labor, Employment and Training Administration.

## WRITTEN NOTICES

The claimants' position is that the statutory condition of former RCW 50.44.050 which denies unemployment benefits during the summer closure of the schools, namely, that the employee have a contract or written notice of subsequent employment would grant to them contractual or enforceable rights not permitted by the civil service act. Their rights of continued employment and the terms of their appointment, dismissal, or suspension are governed by the civil service act and not by any contract or enforceable promise of employment. Thus they argue the written notice that they would perform services at a future date was void as to them and of no force or effect. Furthermore, they argue the record clearly demonstrates that DSHS's notices were not intended to usurp the civil service act by granting claimants additional rights and were sent simply to comply with former RCW 50.44.050.

The claimants' argument is premised on the proposition that the written notice of future employment provided for in RCW 50.44.050 amounts to an enforceable promise of employment. The statute does not require such a promise.

 It is clear that the "reasonable assurance" of reemployment requirements of RCW 50.44.050 denying unemployment benefits to instructional employees, does

---

individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms, . . .

not mean a guaranty of employment.[6] *Jennings v. Department of Empl. Sec.*, 34 Wn. App. 592, 663 P.2d 849, *review denied*, 100 Wn.2d 1022 (1983). Interpreting the first paragraph of former RCW 50.44.050 as it pertained to substitute teachers between successive school years, the *Jennings* court, citing Pennsylvania authority and relying upon the *Draft Language and Commentary*, concluded:

> The critical question is whether the parties in good faith expect the substitute employment relationship to resume.
> . . .
>
> . . .
> . . . We agree with the Commissioner's conclusion that a "reasonable assurance" does not require a guaranty of work, but only that the school district in good faith expects to employ the teacher as a substitute in the coming year, and communicates that expectation to the teacher.

*Jennings v. Department of Empl. Sec.*, 34 Wn. App. at 598–99.

The claimants argue that noninstructional employees are treated differently from instructional employees. While "reasonable assurance" of future employment is all that is required to deny unemployment benefits to instructional employees, written notice that the individual will perform services is required to deny benefits to noninstructional employees. A written notice, claimants argue, amounts to an enforceable obligation. We disagree.

No word or clause of a statute should be deemed superfluous. *Smith v. Greene*, 86 Wn.2d 363, 545 P.2d 550 (1976); *Snow's Mobile Homes, Inc. v. Morgan*, 80 Wn.2d

---

[6] For a similar interpretation of "reasonable assurance," note the following cases. *Allen v. State Dep't of Labor*, 658 P.2d 1342 (Alaska 1983); *Herrera v. Industrial Comm'n*, 197 Colo. 23, 593 P.2d 329 (1979); *August v. Director of Div. of Empl. Sec.*, 386 Mass. 826, 438 N.E.2d 327 (1982); *Williams v. City Sch. Dist.*, 81 A.D.2d 928, 439 N.Y.S.2d 503 (1981); *Lyman v. Commonwealth*, 76 Pa. Commw. 348, 463 A.2d 1270 (1983). *But cf. Fort Wayne Comm'ty Schs. v. Review Bd.*, ___ Ind. App. ___, 428 N.E.2d 1379 (1981); *Sulat v. Board of Review*, 176 N.J. Super. 584, 424 A.2d 451 (1980); *Mallon v. Employment Div.*, 41 Or. App. 479, 599 P.2d 1164 (1979), *revisited in Johnson v. Employment Div.*, 59 Or. App. 626, 651 P.2d 1365 (1982).

283, 494 P.2d 216 (1972); *Cole v. State Utils. & Transp. Comm'n,* 79 Wn.2d 302, 485 P.2d 71 (1971).

The statute specifies that either a "contract *or* an individual . . . notice . . . that the individual will perform services . . . in the second of the academic years or terms" suspends unemployment benefits in certain cases. (Italics ours.) The claimants' interpretation that the notice is an enforceable obligation and thus a contract makes the later condition superfluous. The notice provision is obviously something different and something less than a contractual right of employment. We hold that the notice provision required for noninstructional employees amounts to nothing more than a more precise way of providing assurance of future employment to the individual by a written notice that he will be employed in the future. A guaranty of future employment is not required. *Samuels v. Department of Empl. Sec.,* 37 Wn. App. 409, 680 P.2d 764 (1984). It is clear, from the legislative debate, that this was precisely intended by the Legislature.[7]

---

[7]The following colloquy ensued during the enactment of amendatory RCW 50.44.050 in 1977:

"POINT OF INQUIRY

"Senator Rasmussen: 'Would Senator Ridder yield to a question? Senator Ridder, do I understand you to say that this was part of the federal law that we cut off those school district employees that only work nine months?'

"Senator Ridder: 'This is one of the options which we had available to us, Senator Rasmussen, and it was the decision of the committee to write in what we felt was reasonable assurance language which was what the department was now acting on. The committee felt that reasonable assurance should be somewhat more closely defined.'

"Senator Rasmussen: 'Let me ask another question. Those employees—let's take the very lowest paid in the schools, the cafeteria workers and the cooks that are ordinarily hired for nine months. They will not be able to draw unemployment even though they are looking for work?'

"Senator Ridder: 'I think if they do not have written notice of fall employment and are looking for work, then they would be eligible.'

"Senator Rasmussen: 'Then under this interpretation that you are giving me, each and every school district would have to, in effect, cut those employees off and say, "you are not coming back," and release them so they could get unemployment—'

"Senator Ridder: 'That is true.'

"Senator Rasmussen: '—or look for work.'

Furthermore, the state civil service laws are consistent with our holding.

Former RCW 41.06.150 enables the State Personnel Board to adopt rules "regarding the basis and procedures to be followed for: . . . (7) Sick leaves and vacations; . . . (9) Layoffs when necessary and subsequent reemployment, both according to seniority". WAC 356–18–220 expressly provided the following authority:

> When an employee is in a position assigned to a program or facility whose primary purpose is academic and/or vocational education, and the program or facility follows the customary public school practice of less than a 12–month school year, the employing agency may place the employee on leave without pay while the program or facility is closed for customary school vacations without adjusting the employee's anniversary and periodic increment dates.

From the foregoing it is clear that the State Civil Service Law and procedures contemplate the very situation at bar. That the written notices coextensively comply with the unemployment compensation provisions is not surprising in light of the construction given our laws to be in compliance with the Federal Unemployment Tax Act. In fact, RCW 41.06.260 of the State Civil Service Law states:

> Conflict with federal requirements—Effect—Rules to conform chapter. If any part of this chapter shall be found to be in conflict with federal requirements which are a condition precedent to the allocation of federal funds to the state, such conflicting part of this chapter is hereby declared to be inoperative solely to the extent of such conflict and with respect to the agencies directly

"Senator Ridder: 'If that was the objective. Many school employees, Senator Rasmussen, are on effectively a twelve month basis in which their salary is paid proportionately for a twelve month period, that is, an annual basis even though they are not called upon to perform duties during those summer months, and in actuality, may be available for some kinds of temporary employment if they wish to be employed during the summer. They also, of course, if they are on a twelve months payout, are probably receiving both health and welfare and pension benefits.'

"Senator Rasmussen: 'Thank you, Senator Ridder.'" Senate Journal, 45th Legislature (1977), at 1311.

affected, and such findings or determination shall not affect the operation of the remainder of this chapter in its application to the agencies concerned. The board shall make such rules and regulations as may be necessary to meet federal requirements which are a condition precedent to the receipt of federal funds by the state.

Returning our attention to whether the written notices constitute enforceable assurances of reemployment, as to employees working in an instructional, research or primarily administrative capacity, it is the law in this state that a "reasonable assurance" of reemployment does not mean a guaranty.

Having determined that reasonable assurance rather than a guaranty of future employment is all that is required, we are satisfied that the notices to each claimant were adequate under the statute.

EDUCATIONAL INSTITUTIONS

Claimants argue that the blind school and deaf school are primarily residential institutions (like Rainier School or Lakeland Village), offering academic education as a secondary function.

An "educational institution" is not defined either in the statutory scheme, or in prior Washington case law. A school is an institution consisting of a teacher and pupils, irrespective of age, gathered together for instruction in any branch of learning. *State ex rel. Shoreline Sch. Dist. 412 v. Superior Court,* 55 Wn.2d 177, 346 P.2d 999 (1959), *cert. denied,* 363 U.S. 814 (1960). An educational institution is generally defined in Black's Law Dictionary 461 (5th ed. 1979) as:

> A school, seminary, college, university, or other educational establishment, not necessarily a chartered institution. As used in a zoning ordinance, the term may include not only buildings, but also all grounds necessary for the accomplishment of the full scope of educational instruction, including those things essential to mental, moral, and physical development. Commissioners of District of Columbia v. Shannon & Luchs Const. Co., 57 App.D.C. 67, 17 F.2d 219, 220.

We turn to the United States Department of Labor's *Draft Language and Commentary* and case law from other jurisdictions to assist in establishing a working definition of "educational institution" as it pertains to unemployment compensation benefits.

The *Commentary,* at pages 38–39 states:

There is no definition of an "educational institution" in the federal law other than that for an institution of higher education. For States which want to adopt a definition of educational institution other than an institution of higher education, however, we suggest language similar to the following:

(a) It is an educational institution (except an institution of higher education as defined in section 3304(f) of the FUTA) in which participants, trainees, or students are offered an organized course of study or training designed to transfer to them knowledge, skills, information, doctrines, attitudes or abilities from, by or under the guidance of an instructor(s) or teacher(s).

(b) It is approved, licensed or issued a permit to operate as a school by the State Department of Education or other government agency that is authorized within the State to approve, license or issue a permit for the operation of a school.

(c) The courses of study or training which it offers may be academic, technical, trade, or preparation for gainful employment in a recognized occupation.

In any particular case, the question of whether or not an institution is an educational institution (other than an institution of higher education) within the meaning of the criteria described above will depend on what that particular institution actually does.

In *Simpson v. Iowa Dep't of Job Serv.,* 327 N.W.2d 775 (Iowa Ct. App. 1982), the court concluded that a preschool "Head Start" program qualified as an "educational institution" despite the fact that elements of the program could not be considered academic. The *Simpson* court essentially applied the criteria listed in the *Commentary* excerpt above and found that although the program had not been approved, licensed or issued a permit to operate as a school, it was issued a preschool license by the Department of

Social Services, and its program included the teaching of language, speaking and self–expression skills. *See also Board of Cy. Comm'rs v. Martinez,* 43 Colo. App. 322, 602 P.2d 911 (1979) (Head Start teacher's aides denied unemployment benefits). In *McIntyre v. Employment Div.,* 41 Or. App. 189, 598 P.2d 313 (1979), an education service district was not an educational institution within the meaning of the unemployment compensation statutes because: (1) it was not accredited as a school; (2) it did not have its own students; and (3) it did not offer a course of study on a regular and continuing basis. Finally, in *Sherwin v. Levine,* 48 A.D.2d 733, 367 N.Y.S.2d 868 (1975), a nursery school operated by a religious congregation and conducted by licensed teachers was an institution of education for unemployment benefits irrespective of the fact that it was not part of the coordinated educational system and no formal subjects were taught.

With these examples in mind, we compare the background and operation of the blind school and deaf school prior to the 1978 and 1979 summer recess.

The blind school and deaf school were established by RCW 72.40.010. RCW 72.40.031 fixed the school term for each as a period of 9 months paralleling as near as practical the school terms followed by public schools. During the 9–month school term, many students were residents at the facilities. The remainder lived in nearby communities. During the customary summer vacation, most of the students went home. A handful of students from the blind school were transferred to various permanent residential institutions until school resumed in the fall.

Educational programs were conducted at both schools. The blind school presented a deaf–blind program, a slow learner program, and an academic program. Slightly less than one–half of the students were enrolled in the academic program. The academic program offered subjects similar to those offered in public schools, but the classes were ungraded until the 10th grade. The high school program was accredited by the Superintendent of Public Instruction,

and those who graduated from the 12th grade were given either a college–accepted diploma or a certificate of completion. For many at the blind school, however, the most that could be expected was that they learn to walk, eat and tend to their personal hygiene. Some even required constant monitoring due to seizures and additional problems.

The deaf school had an academic program and classes for slow learners. With the exception of speech and lipreading, the curriculum was similar to that of the school districts. Classes ranged from kindergarten through 12th grade. Its program had a provisional certification from the Northwest Association of Colleges and Schools, and graduates received either a regular high school diploma, a vocational diploma, or a certificate of completion.

Both schools were funded directly by the State and received some federal funds channeled to them by the Superintendent of Public Instruction. Both conducted regular class hours (from approximately 8 a.m. to 2:30 p.m. with a lunch break), and all students were required to attend classes unless unable to do so because of illness. The teachers at the blind school were required to have at least a Bachelor of Arts degree, a Washington State Teaching Certificate, and a course in reading and writing Braille. In addition to a BA degree with a teaching certificate, the teachers at the deaf school were required to have a national certificate and training at a center for the teaching of deaf individuals.

We conclude that the blind school and deaf school are "educational institutions" within the meaning of former RCW 50.44.050. Though each school resembles a residential institution because of the residential living arrangements and the severity of some of the students' handicaps, the primary objective at both schools is the learning of academic skills in a classroom setting. Both schools closely parallel ordinary public schools in many respects, to wit: a 9–month school year with customary summer vacation, accredited high school programs that issue college–accepted diplomas, certified teachers, and a course curriculum sub-

stantially identical to public schools. The fact that some of the students cannot learn more than how to eat and walk does not detract from the schools' main function. There is no error of law.

### PROVIDING SERVICES "FOR" AN EDUCATIONAL INSTITUTION

Claimants finally argue that they did not provide services "for" the blind school and deaf school. They submit that as state civil service employees they worked in, but not for, the schools.

This particular issue has likewise not been previously decided in Washington. Once again, we turn to the *Draft Language and Commentary* and case law authority from other jurisdictions.

Supplement 1 to the *Draft Language and Commentary* possesses the following inquiry:

1. *Question*: Some States employ individuals to provide school lunch programs in schools. These are State employees, not employees of the school. Would the between–terms denial apply?

*Answer*: No. The optional between–terms denial of section 3304(a)(6)(A) applicable to nonprofessional school employees applies to services for an educational institution (other than an institution of higher education). The employees described would be employees of the State working in but not for the educational institution. Therefore, between–terms and reasonable assurances would not be applicable to those employees.

Those provisions would not apply to any individual who works in an educational institution but who is employed by an employing unit other than the educational institution. The entitlement to benefits of such workers should be determined by other applicable provisions in the State law.

In *Milton v. Director of Div. of Empl. Sec.*, 386 Mass. 831, 438 N.E.2d 71 (1982), the court affirmed an administrative decision allowing unemployment benefits for a school bus driver who was performing services that were paid for by a private contractor. *Cf. Pac v. Commonwealth Unemployment Comp. Bd. of Review*, 48 Pa. Commw. 91,

409 A.2d 470 (1979), wherein a substitute bus driver employed by a school district was ineligible for benefits during the summer months. In *Milwaukee v. Department of Indus., Labor & Human Relations,* 106 Wis. 2d 254, 316 N.W.2d 367 (1982), the court ruled that school crossing guards employed by the City rather than by the school are eligible for benefits during summer recess. Likewise, in *Pleasant Hills v. Commonwealth Unemployment Comp. Bd. of Review,* 64 Pa. Commw. 410, 440 A.2d 679 (1982), school crossing guards employed by the Borough did not perform services for an educational institution.

The factual situation in the present case is different than that addressed in the cited cases and supplement 1 to the *Draft Language and Commentary.* Here, claimants are employees of DSHS,[8] and the blind school and deaf school are operated by the Division of Developmental Disabilities of DSHS. To say that claimants do not work for the schools would lead to the logical conclusion that claimants do not work for DSHS. The claimants' strained interpretation of the commonsense meaning of "providing services for an educational institution" is incorrect. There is no error of law.

Affirmed.

PETRIE and WORSWICK, JJ., concur.

Reconsideration denied September 28, 1984.

Review denied by Supreme Court December 19, 1984.

---

[8]Former RCW 50.44.050 on its face confuses whether the claimant must be an employee of the educational institution by interchangeably utilizing "individual" and "employee." The difference between the two was the basis of the Wisconsin decision of *Milwaukee v. Department of Indus., Labor & Human Relations, supra.* We need not address this point since we have decided that claimants are employees of the schools.