Frederick N. PICKERING, Plaintiff-Appellant,†

v.

## LABOR & INDUSTRY REVIEW COMMISSION,
Evans Product Company, and Racine Steel Castings, a division of Evans Product Company, Defendants-Respondents.

Court of Appeals

*No. 89-1634. Submitted on briefs February 23, 1990.—Decided April 18, 1990.*

(Also reported in 456 N.W.2d 874.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *M. Corbett Stevenson* of *Sullivan & Stevenson* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Robert C. Reed, Labor and Industry Review Commission* of Madison.

Before Nettesheim, P.J., Brown and Scott, JJ.

BROWN, J.   Frederick N. Pickering appeals from a determination that he is ineligible for unemployment compensation for periods from 1980 through 1985. The commission determined that during these periods, Pick-

ering was an alien who was not permanently residing in the United States under color of law (PRUCOL). It therefore held that Pickering was not eligible for compensation pursuant to sec. 108.04(18), Stats. The circuit court affirmed, as do we. We reject Pickering's contention that the Immigration Reform and Control Act of 1986 (IRCA) retroactively clothed him with PRUCOL status. Pickering's alternative argument on appeal, that the Immigration and Naturalization Services' (INS) failure to complete deportation proceedings confers PRUCOL status even absent the enactment of IRCA, was not raised before the commission and we deem it waived.

Pickering is a Jamaican citizen. He entered the United States in 1972 on a temporary visa to become a crewman on a cruise ship. He did not join the crew but settled in Racine and began working for Racine Steel Castings. He has been in the United States ever since.

On July 12, 1984, Pickering was arrested by representatives of INS. He was ordered to show cause why he should not be deported. A $3,000 bond was posted for his release, but, for unknown reasons, the hearing to show cause was never scheduled.

On July 14, 1987, Pickering applied for and received temporary resident alien status pursuant to IRCA. This was his first affirmative act in furtherance of legal residence in the United States. He was issued a temporary resident card and for the first time received work authorization.

On various occasions from 1980 through 1985, Pickering was laid off by Racine Castings. For some of these periods, he received unemployment compensation. Subsequently, the Department of Industry, Labor and Human Relations (DILHR) investigated his status and

determined that Pickering had improperly received compensation.

Pickering requested a hearing. The sole issue presented was whether, at the time he performed the services on which he bases his unemployment compensation claim, he was permanently residing in the United States under color of law by virtue of IRCA. The administrative law judge and then the Labor and Industry Review Commission (LIRC) determined that Pickering was not a PRUCOL alien by virtue of IRCA.

Aliens are ineligible for unemployment compensation unless they fit into an exception found in sec. 108.04(18), Stats. That section states:

> (a)   The wages paid to an employe who performed services while the employe was an alien shall, if based on such services, be excluded from the employe's base period wages . . . unless the employe is an alien who was lawfully admitted for permanent residence at the time such services were performed, was lawfully present for the purpose of performing such services, or was permanently residing in the United States under color of law at the time such services were performed . . ..
>
> . . ..
>    (b)   Any amendment of s. 3304(a)(14) of the federal unemployment tax act specifying conditions other than as stated in par. (a) for denial of benefits based on services performed by aliens . . . shall be applicable to this subsection.

The Federal Unemployment Tax Act (FUTA), 26 U.S.C. sec. 3304(a)(14)(A), contains language substantially similar to sec. 108.04(18)(a), Stats.:

> Compensation shall not be payable on the basis of services performed by an alien unless such alien is an individual who was lawfully admitted for permanent

residence at the time such services were performed, was lawfully present for purposes of performing such services, or was permanently residing in the United States under color of law at the time such services were performed . . ..

If a state's unemployment laws comply with federal standards, then private employers in the state receive a substantial tax credit on their federal unemployment tax payments. *City of Milwaukee v. DILHR,* 106 Wis. 2d 254, 260, 316 N.W.2d 367, 370 (1982). However, if the state laws fail to meet federal standards, then private employers in the state lose this tax credit and the state itself faces the loss of federal funds for unemployment compensation purposes. *Id.*

The Immigration Reform and Control Act became law in 1986. With certain exceptions not applicable here, it provides that illegal aliens who have continuously resided in the United States since January 1, 1982 may apply for and receive temporary and then permanent resident status. 8 U.S.C. secs. 1255a(a)(2), (b). Unlawful residence since that date is an IRCA prerequisite. *Id.* Pickering asserts that by virtue of IRCA, Congress sanctioned and legitimated his presence in the United States and retroactively conferred color of law status upon him. The commission disagreed.

Ordinarily, we defer to LIRC's interpretation of laws that it has responsibility for administering. *County of Milwaukee v. LIRC,* 113 Wis. 2d 199, 202, 335 N.W.2d 412, 414 (Ct. App. 1983). However, we give no special deference when this court is as competent as the administering agency to decide the legal question involved. *Id.* at 202, 335 N.W.2d at 414-15.

The question of how IRCA impacts on the definition of PRUCOL in the area of unemployment compensation is one of first impression, for the commission and for this court. We therefore give no special deference to the commission's determination, and instead review the legal question *ab initio*. *Id.* at 202, 335 N.W.2d at 414.

The term "color of law" is not defined by Wisconsin statutes or by FUTA. It has been widely recognized as an ambiguous one.

> The scope of the phrase in question—"or otherwise permanently residing in the United States under the color of law"—is not clear from the language employed. Instead, the phrase is designed to be adaptable and to be interpreted over time in accordance with experience, developments in the law, and the like. In this sense the phrase is organic and fluid, rather than prescriptive or formulaic.

*Berger v. Heckler,* 771 F.2d 1556, 1571 (2d Cir. 1985). It is therefore appropriate to refer to external sources to construe the term. *City of Milwaukee,* 106 Wis. 2d at 257, 316 N.W.2d at 368.

A variety of cases from other jurisdictions have defined the term "color of law" relative to aliens in the context of unemployment compensation as well as the SSI, AFDC and Medicaid programs. The seminal case discussing PRUCOL status is *Holley v. Lavine,* 553 F.2d 845 (2nd Cir. 1977), *cert. denied,* 435 U.S. 947 (1978). *Holley* held that an alien parent who receives an official assurance by letter from INS that for humanitarian reasons deportation is not contemplated is in the United States under color of law for purposes of the AFDC

program by virtue of INS discretionary action. The court reasoned:

> The phrase ["under color of law"] obviously includes actions not covered by specific authorizations of law. It embraces not only situations within the body of the law, but also others enfolded by a colorable imitation. "Under color of law" means that which an official does by virtue of power, as well as what he does by virtue of right. The phrase encircles the law, its shadows, and its penumbra. When an administrative agency or a legislative body uses the phrase "under color of law" it deliberately sanctions the inclusion of cases that are, in strict terms, outside the law but are near the border.
>
> There is no more common instance of actions "under color of law" than the determination of an official charged with enforcement of the law that he, as a matter of public policy, will exercise his discretion not to enforce the letter of a statute or regulation because such enforcement would involve consequences, or inflict suffering, beyond what the authors of the law contemplated.

*Id.* at 849–50.

Pickering asserts that congressional action in creating the statutory requirements of IRCA legitimized United States presence for those in Pickering's class. This legitimization, Pickering argues, conferred color of law status upon him for the illegal residence period.

We are unable to find support for this argument in Pickering's brief or in our own research. There is nothing to indicate that Congress' act of conditioning amnesty upon illegal presence from 1982 retroactively changed the status of aliens in any way.

We note first that the language of FUTA, and therefore of sec. 108.04(18), Stats., was unchanged by IRCA.

367

FUTA has continued to require that an alien be PRUCOL "at the time such services were performed" to be eligible for compensation based on those services. 26 U.S.C. sec. 3304(a)(14)(A). Subsequent immigration legislation does not change the fact that during the period of 1980 through 1985 Pickering's status was that of illegal alien and not PRUCOL.

Pickering points to no other INS or other governmental action that has been held to confer retroactive PRUCOL status. Those courts ruling that PRUCOL status was conferred by INS action or policy have held that such status was attained when INS knew of and acquiesced to an alien's presence and not before. *See, e.g., Industrial Comm'n v. Arteaga,* 735 P.2d 473, 482 (Colo. 1987) (claimants who filed for adjustment of status based on their marriages to United States citizens and who had received work authorizations were PRUCOL and should have received wage credits entitling them to unemployment compensation eligibility as of the date they filed their petitions and received work authorization); *Alfred v. Florida Dep't of Labor & Employment Sec.,* 487 So. 2d 355, 357 (Fla. Dist. Ct. App. 1986) (aliens in possession of valid "employment authorized" permits during the period in which their unemployment credits were earned were PRUCOL); *Vazques v. Review Bd. of Ind. Employment Sec. Div.,* 487 N.E.2d 171, 175 (Ind. Ct. App. 1985) (alien may establish PRUCOL status by showing legal authorization to work during the time necessary to accumulate the required work credits). These cases have permitted an alien to recover unemployment compensation from the date that both of these conditions are met; they have not held that compensation was available for periods prior to the conditions having been satisfied. Pickering has not demonstrated

that IRCA legitimization should be retroactive when other modes of legitimization are not.

Additionally, the commission's position comports with that of the Department of Labor. The Department of Labor's interpretation of unemployment compensation laws provides indicia of legislative intent. *City of Milwaukee,* 106 Wis. 2d at 260-62, 316 N.W.2d at 370-71. The Unemployment Insurance Program Letters issued by the Department of Labor state that FUTA's requirement that benefits be based on services while the alien was in a proper status "at the time services were performed" is unchanged by IRCA. *See Unemployment Ins. Program Letter 11-88.* 2 (Dep't Labor 1987). With one exception not applicable here, the Department of Labor's position is that "[t]he status of temporary residence or the granting of work authorization [pursuant to IRCA] *does not* confer retroactive lawful presence for purposes of monetary entitlement." *Id.* (emphasis in original). This accords with the language of IRCA, which describes the presence of aliens in Pickering's position as having been unlawful prior to attaining resident status under IRCA. 8 U.S.C. sec. 1255a(a)(2).[1]

Finally, the one federal case that has discussed whether IRCA retroactively changes an alien's status concluded that it did not. *United States v. Zalman,* 870

---

[1]States may, if they choose, pay aliens benefits based on services performed on or after November 6, 1986 if the alien has been granted lawful temporary resident status. This is a limited retroactive use of an alien's wages, based on the recognition that INS did not implement IRCA until May 5, 1987, six months after it was enacted. *Unemployment Ins. Program Letter 12-87, Change 1,* 3 (Dep't Labor 1988). This rule does not apply to Pickering, however. He seeks, not retroactive use of his wages to November 6, 1986, but retroactive adjustment of status to January 1, 1982 through 1985.

F.2d 1047 (6th Cir.), *cert. denied, Sharifinassab v. United States,* 109 S. Ct. 3248 (1989). *Zalman* states that "the Act does not in fact confer authority upon the Attorney General to *retroactively* adjust an alien's status in any manner, including that of temporary residence." *Id.* at 1052 (emphasis in original). Counsel's assertion to the contrary was dismissed as a legal fiction . *Id.*

We conclude that compliance with FUTA requires that an alien can only recover unemployment compensation if he is PRUCOL at the time he performs the services upon which his claim is based. We see no exception for IRCA aliens in the statutes or the case law.

Pickering also argues that INS' failure to deport him prior to IRCA's enactment constitutes a discretionary decision to permit him to stay, and therefore clothes him with PRUCOL status under *Holley.* This argument was never made before the commission. We therefore deem the argument waived, and we decline to address it. *Zeller v. Northrup King Co.,* 125 Wis. 2d 31, 35, 370 N.W.2d 809, 812 (Ct. App. 1985).

*By the Court.*—Order affirmed.