# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2023AP1010

† Petition for Review filed

Complete Title of Case:


KATHRYN M. MORGAN,

PLAINTIFF-APPELLANT,†

V.

LABOR AND INDUSTRY REVIEW COMMISSION AND DEPARTMENT OF

WORKFORCE DEVELOPMENT,

DEFENDANTS-RESPONDENTS.



| | |
|---|---|
| Opinion Filed: | June 5, 2024 |
| Submitted on Briefs: | April 1, 2024 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Lazar, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Victor Forberger*, Madison. |
| Respondent ATTORNEYS: | On behalf of the defendants-respondent, the cause was submitted on the brief of *Jeffrey J. Shampo*, Labor and Industry Review Commission, Madison. |
| Nonparty ATTORNEYS: | A nonparty brief was filed by *Brenda Lewison* of *Legal Action of Wisconsin, Inc.*, Milwaukee. |

COURT OF APPEALS
DECISION
DATED AND FILED

June 5, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1010**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV1456

IN COURT OF APPEALS

KATHRYN M. MORGAN,

PLAINTIFF-APPELLANT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION AND DEPARTMENT OF WORKFORCE DEVELOPMENT,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Waukesha County: MICHAEL J. APRAHAMIAN, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

¶1    NEBUAUER, J. Katherine M. Morgan appeals from an order affirming the Labor and Industry Review Commission's[1] determination that she underreported her self-employment income when seeking federal Pandemic Unemployment Assistance (PUA) benefits and denying her request to waive repayment. Under the PUA program, a self-employed individual's weekly benefit is "reduced (but not below zero) by the full amount of any income received during the week for the performance of services in self-employment." 20 C.F.R. § 625.6(f)(2) (2024). The regulation states further that "the term 'any income' … means gross income." *Id.* LIRC affirmed an administrative law judge's conclusion that the weekly gross receipts of a sewing business of which Morgan was a part owner should be used to reduce her weekly benefits. The Commission also determined that repayment of benefits could not be waived because Morgan, who disclosed only the distributions she had received from the business, was at fault for the overpayments.

¶2    Morgan challenges these determinations on appeal, arguing that the correct measure of her gross income from the sewing business is the distributions that were periodically paid to her. The Commission disagrees and contends that its decision is consistent with the definition of gross income in a Wisconsin income tax statute, WIS. STAT. § 71.03(1) (2021-22),[2] which defines "'[g]ross income' from a business [to be] the total gross receipts without reduction for cost of goods sold, expenses or any other amounts." As explained below, we agree with LIRC that § 71.03(1) provides the applicable definition of "gross income." We also conclude

---

[1] We refer to the Labor and Industry Review Commission in this opinion as LIRC or the Commission.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

that the Commission did not erroneously exercise its discretion in denying Morgan's request to waive repayment because it reasonably concluded that she was at fault for the overpayments. Based upon these conclusions, we affirm the circuit court's order.

## BACKGROUND

¶3 The following facts are drawn principally from LIRC's findings of fact. Morgan filed a claim for PUA benefits in May 2020. She claimed that her in-home daycare business, a sole proprietorship, had shut down due to the COVID-19 pandemic in March 2020. Morgan received benefits for various weeks between the twelfth week of 2020 (ending March 21, 2020) through the thirty-fifth week of 2021 (ending August 28, 2021).

¶4 During that period, Morgan was also a partner in a custom sewing business, for which she held a forty percent ownership interest and performed sales, marketing, and occasional sewing services. The business received income almost every week of the period Morgan received PUA benefits. But Morgan and her business partner only paid themselves distributions "when they felt the business ha[d] enough money" to justify it.

¶5 In connection with her PUA benefits claim, Morgan was unsure whether she should answer questions on weekly certifications regarding self-employment relative to her daycare business or her sewing business. A claims specialist advised her to answer the questions as they related to her daycare business. As a result, Morgan answered "no" to the question, "did you work in your self-employment?" To report the income she received from the sewing business, Morgan answered "yes" to the question, "did you receive another type of income you haven't reported?" She then was prompted to call the Department of Workforce

Development (DWD), to which she reported the distributions she received from the sewing business.

¶6   In September 2021, the DWD issued two determinations in which it concluded that Morgan had underreported her income from the sewing business, resulting in overpayments of PUA benefits. For the period from the week ending March 21, 2020, through the week ending January 2, 2021, the DWD calculated a total overpayment of $2,577. For the period from the week ending January 9, 2021, through the week ending August 28, 2021, it calculated an overpayment of $260.

¶7   Morgan appealed these determinations. An administrative law judge (ALJ), acting as an appeal tribunal, conducted a hearing and affirmed the DWD's determinations that Morgan had underreported her self-employment income and was required to repay the PUA benefits she should not have received. Of note, the ALJ stated that Morgan had to report "*gross income from self-employment* on … her weekly certifications and such income may reduce the PUA benefits paid." Because Morgan held a forty percent ownership interest in the sewing business, the ALJ determined that "her gross income each week was 40% of the business's gross income received each week." The ALJ disagreed with the DWD's calculation of the overpayment for the period from the week ending March 21, 2020, through the week ending January 2, 2021, and determined that the overpayment was $1,671.

¶8   In September 2022, LIRC modified and affirmed the ALJ's decisions. The Commission adopted the ALJ's findings of fact and conclusions of law, except that it reduced the $1,671 overpayment back to $260. The Commission also concluded that repayment could not be waived because the overpayment was the result of Morgan's failure to "provide full information regarding her wages earned

during" the relevant time periods. The circuit court affirmed LIRC's decision. Morgan appeals.

## DISCUSSION[3]

### I.       Applicable Law and Standard of Review

¶9      The federal PUA program is administered by state agencies. *See* 15 U.S.C. § 9021(f) (2024). State statutes providing for judicial review of regular unemployment insurance claims govern appeals of decisions involving PUA benefits. *See* § 9021(c)(5)(B). Thus, our review is limited by Wisconsin's statute governing judicial review of LIRC's decisions, WIS. STAT. § 108.09(7)(c). *See Catholic Charities Bureau, Inc. v. LIRC*, 2024 WI 13, ¶22, 411 Wis. 2d 1, 3 N.W.3d 666.

¶10      "In an appeal from a LIRC determination, we review LIRC's decision rather than that of the circuit court." *Id.*, ¶22. "We may either confirm the [C]ommission's order or set it aside on one of three grounds:   (1) if the [C]ommission acted without or in excess of its powers; (2) if the order was procured by fraud; or (3) if the [C]ommission's findings of fact do not support the order." *Id.*; *see also* WIS. STAT. § 108.09(7)(c)6. "LIRC acts outside of its power when it incorrectly interprets a statute." *Catholic Charities*, 411 Wis. 2d 1, ¶22.

¶11      LIRC's factual findings are conclusive as long as they are supported by credible and substantial evidence. *Id.*, ¶23. "Credible and substantial evidence is that which is 'sufficient to exclude speculation or conjecture.'" *Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶48, 349 Wis. 2d 234, 833 N.W.2d 665 (citation

---

[3] In addition to the parties' briefs, we have received and reviewed an amicus brief from Legal Action of Wisconsin, Inc.

omitted). Here, Morgan concedes that "[t]here are no substantive factual disputes between the parties." We review LIRC's conclusions of law de novo. ***Catholic Charities***, 411 Wis. 2d 1, ¶23.

## II.     LIRC Did Not Incorrectly Interpret the Applicable Law.

¶12     The Coronavirus Aid, Relief, and Economic Security (CARES) Act makes certain "covered individual[s]" eligible for PUA benefits.  15 U.S.C. § 9021(a)(3), (b).  The regulations that govern these benefits provide in relevant part that PUA benefits payable to "an unemployed self-employed individual for a week of unemployment shall be … reduced (but not below zero) by the full amount of any income received during the week for the performance of services in self-employment."  20 C.F.R. § 625.6(f)(2); *see also* 15 U.S.C. § 9021(h).  Paragraph 625.6(f)(2) states further that "the term 'any income' … means gross income."  The regulation does not indicate how "gross income" is to be determined, but guidance issued by the United States Department of Labor provides that "state law will determine the definition of 'gross income' for purposes of a self-employed individual."  U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 16-20, Change 2 (July 21, 2020);[4] *see also **Pickering v. LIRC***, 156 Wis. 2d 361, 369, 456 N.W.2d 874 (Ct. App. 1990) ("The Department of Labor's interpretation of unemployment compensation laws provides indicia of legislative intent.").

¶13     LIRC agrees that Morgan is a "covered individual" and thus was eligible for PUA benefits.  The parties also agree that it is appropriate to look to Wisconsin law for a definition of "gross income" for the purpose of interpreting and

---

[4] A copy of this letter is available at https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_16-20_Change_2.pdf.

applying 20 C.F.R. § 625.6(f)(2). The crux of their dispute concerns how gross income is to be determined under Wisconsin law.

¶14 As the parties acknowledge, Wisconsin's unemployment insurance statutes and administrative rules do not define "gross income."[5] Morgan argues that the definition that we should apply is found in a provision in Wisconsin's unemployment insurance law, WIS. STAT. § 108.02(26)(a), which defines the term "[w]ages" to mean "every form of remuneration payable, directly or indirectly, for a given period, … by an employing unit to an individual for personal services." Applying that definition to her case, she argues that the periodic distributions she received from the sewing business should be considered her gross income for the purpose of 20 C.F.R. § 625.6(f)(2) "because they were the total business income she was receiving" for the work she did for the business.

¶15 LIRC disagrees and points to the definition of gross income in a provision of Wisconsin's tax code, WIS. STAT. § 71.03(1). That provision states in relevant part that "'[g]ross income' from a business or farm consists of the total gross receipts without reduction for cost of goods sold, expenses or any other amounts." As applied here, this definition accords with LIRC's determination that Morgan received excessive benefits because only her distributions from the sewing business, rather than forty percent of its gross receipts, were considered in calculating her benefits. LIRC maintains that there is no other applicable definition of gross income in Wisconsin statutes or case law. It also argues that treating the periodic distributions Morgan received as her "wages" under WIS. STAT.

---

[5] LIRC suggests that the reason for this is "because an individual who claims *regular* unemployment insurance benefits is not required to report self-employment income to the department, nor is self-employment income taken into account in determining that individual's weekly *regular* unemployment insurance benefit amount under WIS. STAT. § 108.05(3)." The reason is not relevant to this opinion.

7

§ 108.02(26) and using those amounts to reduce her PUA benefits is contrary to the text of the applicable regulation, which specifically distinguishes "wages" from "any income." *See* 20 C.F.R. § 625.6(f)(2) ("Notwithstanding the definition of 'wages' for a self-employed individual under [20 C.F.R.] § 625.2(u) [(2024)], the term 'any income' for purposes of this paragraph (f)(2) means gross income.").[6]

¶16 We agree with LIRC that it is appropriate to look to WIS. STAT. § 71.03(1) for the definition of "gross income" that applies under 20 C.F.R. § 625.6(f)(2). Morgan does not identify another definition of that term in Wisconsin law for us to consider, and her suggestion that we rely on WIS. STAT. § 108.02(26)'s definition of "wages" is at odds with the distinction drawn in § 625.6(f)(2) between wages and a self-employed individual's gross income. Morgan fails to supply a persuasive justification for treating wages as gross income when the regulation specifically directs us *not* to do so.

¶17 Morgan purports to identify several "major problems" with LIRC's position, but her arguments do not persuade us that the Commission erred. First, she argues that gross income for a self-employed individual "is typically understood" to be that person's earnings less the costs he or she incurs to produce a product. She cites a former Wisconsin Department of Industry, Labor and Human Relations regulation stating that "'income' from self-employment means the amount of gross income, gross profits or total income earned from the self-employment activity for a given period of time minus total allowable deductions."

---

[6] That inapplicable code provision, 20 C.F.R. § 625.2(u), states: "Wages means remuneration for services performed for another, and, with respect to a self-employed individual, net income from services performed in self-employment."

WIS. ADMIN. CODE § ILHR 131.03 (Nov. 1989).[7] As LIRC notes, however, this regulation was repealed more than thirty years ago after its authorizing statute, WIS. STAT. § 108.05(8) (1989-90), was itself repealed. *See* 1991 Wis. Act 89, § 39. Morgan offers no citation to current Wisconsin law in support of her argument, which diminishes its persuasive force significantly because the Department of Labor guidance instructs us to consult state law to determine what "gross income" means in 20 C.F.R. § 625.6(2)(f). Morgan's argument is untethered to such authority and thus furnishes no basis to set aside the Commission's decision.

¶18　Morgan also argues that by failing to consider a business's "basic costs, the Commission is creating additional, phantom income" for self-employed individuals like her. She contends that the Commission's approach to determining her gross income "magnif[ied] her income five-fold from what she actually received" from the sewing business. This, in her view, undermines "the purpose of economic stimulus behind unemployment benefits, and particularly PUA benefits." While these policy-oriented arguments might have some persuasive force in recommending a different definition of gross income grounded in Wisconsin law, Morgan does not direct us to an alternate definition. We are bound to apply the federal regulations regarding PUA benefits as they are written. Paragraph 625.6(f)(2) of Title 20 of the Code of Federal Regulations requires an offset based on gross income. WISCONSIN STAT. § 71.03(1) is the only state-law

---

[7] The regulation is accessible online at https://docs.legis.wisconsin.gov/code/register/1989/407b/insert/ilhr131.pdf.

definition of that term that either party has urged us to adopt.[8]  Morgan has not convinced us that use of that definition with respect to PUA benefits determinations is inappropriate.

### III.    LIRC Did Not Erroneously Exercise its Discretion In Denying Waiver of Repayment.

¶19    The other issue Morgan raises on appeal concerns LIRC's determination that it was not appropriate to waive her obligation to repay the PUA benefits she should not have received.  The CARES Act requires repayment of PUA benefits to which an individual is not entitled but provides that a state "may waive such repayment if it determines that (A) the payment of such pandemic employment assistance was without fault on the part of any such individual; and (B) such repayment would be contrary to equity and good conscience."  15 U.S.C. § 9021(d)(4)(A)-(B).  Consistent with the statute's use of the word "may," Department of Labor guidance regarding such waivers states that "[i]t is a matter of state discretion whether to exercise this waiver authority."  U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 20-21 at 6 (May 5, 2021).[9]  Accordingly, we review LIRC's decision for an erroneous exercise of discretion.  That is to say, we look to see if the Commission considered the relevant facts, applied the proper legal standards, and reached a decision "that a reasonable person

---

[8] In a footnote of its brief, LIRC acknowledges an alternative definition of "gross income" in WIS. STAT. § 49.686(1), a statute that concerns a Wisconsin program to reimburse the costs of two drugs, azidothymidine and pentamidine.  Section 49.686(1) defines "gross income" as "all income, from whatever source derived and in whatever form realized, whether in money, property or services."  Neither LIRC nor Morgan argues that we should adopt this definition as the definition of "gross income" for the purpose of 20 C.F.R. § 625.6(f)(2).

[9] A copy of this letter is available at https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2021/UIPL_20-21.pdf.

could reach." *See **Verhaagh v. LIRC***, 204 Wis. 2d 154, 160, 554 N.W.2d 678 (Ct. App. 1996).

¶20    LIRC determined that a waiver was not appropriate in Morgan's case because she was at fault for the overpayment. The Department of Labor guidance specifies that "[s]tate law determines when an individual is considered to not be at fault for the overpayment." U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 20-21 at 6 (May 5, 2021). The parties agree that the relevant state law on this point is WIS. STAT. § 108.04(13)(f), which provides in part that an employee is at fault for erroneously paid benefits if the employee "fails to provide correct and complete information to the department."

¶21    LIRC could reasonably conclude that Morgan did not provide correct and complete information regarding her gross income from the sewing business to the DWD, and thus that she was at fault for the overpayments. LIRC found as a fact that Morgan listed the amounts of her periodic distributions from the sewing business in her weekly benefit certifications. Though neither the ALJ nor the Commission found it as a fact, the parties appear to agree that at some point after Morgan had been reporting the distributions, she was contacted by a DWD adjudicator and asked for invoices that would show sales made by the sewing business, which she provided in August 2021. After that information was provided, the DWD determined that Morgan had underreported her income, resulting in overpayments of PUA benefits. Because the DWD (and later LIRC) concluded that the business's gross receipts should have been factored into her benefit calculations, rather than the distributions she received, the Commission's determination that the overpayments resulted from Morgan's failure to provide correct and complete information was reasonable.

¶22     Morgan argues that LIRC "provided no rational explanation" for its decision to deny her a waiver.  She emphasizes that the Commission adopted the ALJ's findings that she was initially confused about what information to report about her self-employment and that, after seeking clarification on this point, she reported the distributions she received from the sewing business to DWD.  The ALJ further found that Morgan "did not intend to deceive the department with her answers."  Morgan argues that it was not until November 2022—three months after LIRC issued the decisions under review here—that the Commission first publicized, in a separate unemployment insurance decision, its analysis adopting the definition of "gross income" in WIS. STAT. § 71.03(1) for the purpose of 20 C.F.R. § 625.6(f)(2).  *See* Roberto R. Islas, Hearing Nos. 21615743MD, 21615744MD & 21615745MD (Lab. & Indus. Rev. Comm'n Nov. 29, 2022).[10]  In essence, she contends that the Commission changed its position as to the meaning of "gross income" between the weeks in 2020 and 2021 when she submitted her distribution amounts without complaint or pushback by the DWD and LIRC's November 2022 decision in the matter involving Islas.  This, in her view, precludes a determination of fault on her part.  *See* U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 20-21, Change 1 at 10 (Feb. 7, 2022) (stating that "the state may also find that an individual is without fault if the individual provided incorrect information due to conflicting, changing, or confusing information or instructions from the state").[11]

¶23     Morgan's arguments do not convince us that the Commission erroneously exercised its discretion.  Though LIRC found that she was initially

---

[10]  A copy of this decision is available at https://lirc.wisconsin.gov/ucdecsns/4356.pdf.

[11]  A copy of this letter is available at https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2022/UIPL_20-21_Change_1.pdf.

confused about what information to report regarding her self-employment, the confusion was *not* about whether she should report the sewing business's total sales receipts or her weekly distributions—rather, it concerned whether she should report self-employment income from the sewing business or her daycare business. In addition, neither LIRC nor the ALJ found that DWD initially instructed Morgan to report only her distributions, and Morgan directs us to no evidence in the record that she received such an instruction. At most, the evidence shows that she submitted her distribution amounts and then at a later date was asked for, and provided, the sewing business's gross sales figures. That later request is not sufficient to show that the DWD had given her conflicting, changing, or confusing information or instructions such that she should not be deemed at fault for the overpayments.

¶24 Because we conclude that Morgan has not shown that it was unreasonable for LIRC to conclude that she was at fault for the overpayments of her PUA benefits, it is not necessary for us to address the second element of the waiver analysis—whether "repayment would be contrary to equity and good conscience." *See* 15 U.S.C. § 9021(d)(4)(B).

## CONCLUSION

¶25 For the reasons stated above, we conclude that Morgan's arguments do not furnish a basis to set aside LIRC's decisions. We agree with the Commission that WIS. STAT. § 71.03(1) provides the applicable definition of "gross income" as that term is used in the relevant PUA regulation, 20 C.F.R. § 625.6(f)(2). In addition, Morgan has not carried her burden to show that LIRC's failure to waive her repayment obligation was an erroneous exercise of discretion. Thus, the circuit court's order is affirmed.

*By the Court.*—Order affirmed.